IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| COREY L. COLES, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL NO. 3:10cv491-DWD |
| DELTAVILLE BOATYARD, LLC, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This matter is before the Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1) on the Defendant's motion to dismiss (Docket No. 10). The matter has been adequately addressed by the parties' briefs and oral argument would not materially aid the decisional process. For the reasons set forth herein, the Defendant's motion to dismiss is GRANTED, in part, and DENIED, in part. The Plaintiff's Amended Complaint is DISMISSED, without prejudice, and the Court hereby GRANTS the Plaintiff leave to amend his pleading to address the issues therein as addressed in this Memorandum Opinion.

**I. BACKGROUND**

The Court has reviewed the Complaint and assumes that all well-pleaded allegations therein are true, and it further views the facts in the light most favorable to the Plaintiff, as is required in resolving a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). See Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). Given such a perspective, the following

narrative represents the facts for purposes of resolving the motion.[1]

On June 8, 2004, Deltaville Boatyard, LLC ("Deltaville" or "Defendant") hired Corey L. Coles ("Coles" or "Plaintiff"), a boat painter with more than sixteen years of experience. (Am. Compl. ¶¶ 5 - 6.) In spite of his satisfactory performance, and without explanation, Deltaville terminated Coles' employment almost one year later. (Id. ¶¶ 6 - 8.) Shortly thereafter, Coles filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that he was discharged on account of his race, African-American. (Id.)

Following his termination from Deltaville, Coles obtained employment with a successive series of employers engaged in the same industry as Deltaville, and in each case he was ultimately terminated. First, he worked for Crown Marine, Inc. ("Crown Marine") as a boat painter, performing his job competently and without incident. (Id. ¶¶ 11 - 12.) However, in early November 2005, Keith W. Ruse ("Ruse"), Deltaville's owner, visited Crown Marine, provided it with a copy of the EEOC charge, and explained that it should "be careful" because Coles might file a charge against Crown Marine. (Id. ¶¶ 13 - 16.) Less than one week later, Crown Marine terminated Coles' employment, and its owner, John Crown, commented that "I suppose you are going to file a charge against me like you did against Mr. Ruse." (Id. ¶¶ 17-18.)

---

[1] To the extent that Deltaville challenges whether Coles exhausted his administrative remedies, in fact, the standard of review permits the Court to consider and weigh evidence beyond the pleadings without converting the motion to one for summary judgment. Johnson v. Portfolio Recovery Associates, LLC, 682 F. Supp. 2d 560, 566 (E.D. Va. 2009); Virginia v. United States, 926 F. Supp. 537, 540 (E.D. Va. 1995). The only evidence "outside" of the pleadings considered for this purpose are the Equal Employment Opportunity Commission ("EEOC") complaint and related documents, attached to the parties' briefs and referenced at paragraphs 61 through 64 of the Amended Complaint. Those documents "speak for themselves," so the Court need not deviate from the otherwise applicable standard of review in assessing their relevance to the narrow issue of whether subject matter jurisdiction, in fact, exists.

At that time, Coles learned that Ruse had faxed a copy of the EEOC charge to almost every boatyard in the area, informing every potential employer in the industry that Coles had filed the charge against Deltaville. (Id. ¶¶ 19, 25.) Moreover, Crown Marine informed Coles that Ruse had stated his intention to prevent Coles from ever working at a boatyard in Deltaville again. (Id. ¶ 20.)

Within one week, Coles found a job with Deagles Boatyard, Inc. ("Deagles"). Again, Ruse contacted the owners of Coles' new employer, telling them about the EEOC charge and warning them that they had "better watch out" and "be careful," allegedly because Coles might file a charge against Deagles. (Id. ¶¶ 21 - 25.) The owners of Deagles informed Coles that his work was acceptable to them, and that they would not terminate his employment. (Id. ¶26.) Several months later, however, Deagles was sold to Rick Farinholt ("Farinholt"), who renamed the business Chesapeake Marine Railway, LLC ("Chesapeake Marine"). (Id. ¶ 28.) Ruse again visited Coles' new employer, provided a copy of the EEOC charge, and warned Chesapeake Marine in the same manner as before. (Id. ¶¶ 29 - 33.) Farinholt confronted Coles with this information and asked him to explain, which Coles refused to do. (Id. ¶¶ 34 - 38.) Although he performed his job up to expectations, Chesapeake Marine terminated Coles' employment, without explanation, approximately one month after Ruse warned Farinholt about the EEOC complaint. (Id. ¶¶ 39 - 43.)

Finally, Coles obtained employment with Schroeder Yacht Systems, Ltd. ("Schroeder Yacht Systems"). Again, he met his new employer's expectations for a number of months, but was abruptly terminated without explanation. (Id. ¶¶ 43 - 46.) Because Schroeder Yacht Systems was yet another boatyard in Deltaville's geographic area, they presumably received one

3

of Ruse's numerous faxes sent throughout the local industry.

Shortly before losing his job at Chesapeake Marine, Coles filed a second EEOC charge against Deltaville, this time alleging unlawful retaliation by Deltaville's interference with his subsequent employment opportunities. (Id. ¶¶ 40, 61.) At that time, Coles had been terminated only once as a result of Deltaville's alleged retaliation. Ultimately, EEOC concluded that there was reasonable cause to believe that Deltaville had retaliated against him, provided him with notice of his right to sue, and he initiated this action. (Id. ¶¶ 62 - 64.)

## II. SUBJECT MATTER JURISDICTION

Deltaville challenges the Court's jurisdiction over the subject matter of Count I, arguing that Coles has failed to exhaust his administrative remedies, as required. (Def.'s Br. Sup. Mot. Dismiss ("Def.'s Br.") at 3-6.) The Court addresses the issue of subject matter jurisdiction initially because it concerns "the court's very power to hear the case." Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 442 n.4 (4th Cir. 1999).

### A. Standard of Review

A motion made pursuant to Fed. R. Civ. P. 12(b)(1) challenges the court's jurisdiction over the subject matter of the complaint. If a defendant contends that the complaint fails to allege facts upon which subject matter jurisdiction can be based, all facts in the complaint must be presumed to be true. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982); See also King v. Riverside Reg'l Med. Ctr., 211 F. Supp. 2d 779, 780-81 (E.D. Va. 2002). Alternatively, if the defendant argues that the jurisdictional facts in the complaint are untrue, "the Court may 'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" Virginia

4

v. United States, 926 F. Supp. 537, 540 (E.D. Va. 1995) (quoting Capitol Leasing Co. v. FDIC, 999 F.2d 188, 191 (7th Cir. 1993)).  See also Adams, 697 F.2d at 1219.  Consideration of evidence outside of the pleadings does not necessarily convert the motion to one for summary judgment.  Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted).  In either case, the plaintiff bears the burden of proof to preserve jurisdiction.  Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

**B.  Discussion**

Deltaville challenges the subject matter jurisdiction of Count I, Coles' Title VII claim, on two bases.  First, Deltaville argues that Coles fails to *plead* that he has exhausted his administrative remedies.  Next, Deltaville contends that Coles has, *in fact*, failed to exhaust those administrative remedies with respect to employers Deagles Boatyard, Chesapeake Marine Railway, and Schroeder Yacht Systems.  Notably, Deltaville argues only that Coles fails to *plead* exhaustion of administrative remedies as to his employment with Crown Marine, but does not assert that he has failed to exhaust those remedies, *in fact*, with respect to Crown Marine. (Compare Def.'s Br. at 4 with Def.'s Br. at 6.)

**(1)  Failure to Plead Exhaustion of Administrative Remedies**

Before filing suit, a Title VII plaintiff must file an administrative charge with the EEOC. Chacko v. Patuxent Institution, 429 F.3d 505, 506 (4th Cir. 2005).  The charge "frames the scope of future litigation," and "'[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.'"  Id. (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996)).

5

Here, Coles' Amended Complaint details only the process of filing his EEOC charges; it does not set forth the nature or scope of those charges. Thus, the Amended Complaint shall be dismissed for failure to sufficiently plead that he exhausted his administrative remedies. However, the Court takes note of the fact that Coles has attached the EEOC charge, as well as the EEOC's responses, to his brief in opposition to the motion to dismiss. Moreover, the Court finds that Coles can easily remedy the failure to *plead* the scope of his efforts to exhaust his administrative remedies by simply attaching the EEOC charge and related documents to the pleading. Accordingly, and pursuant to Fed. R. Civ. P. 15(a)(2), the Court grants Coles leave to further amend the Amended Complaint.

**(2)     Failure to Exhaust Administrative Remedies in Fact**

Deltaville's argument also substantively challenges whether Coles, in fact, exhausted his administrative remedies. Specifically, Deltaville argues that the scope of Coles' second EEOC charge is limited to Ruse's actions toward Crown Marine, thus failing to include Ruse's actions involving Deagles, Chesapeake Marine, and Schroeder Yacht Systems within the permissible scope of the litigation. Pursuant to such logic, Coles must file another EEOC charge including each additional employer in order to permit the Court to exercise subject matter jurisdiction. The argument must fail for two reasons, each of which forms the basis for the rule in Nealon v. Stone, 958 F.2d 584 (4th Cir. 1992), that "a plaintiff may raise the retaliation claim for the first time in federal court." Id. at 590.

First, "the scope of a Title VII lawsuit may extend to 'any kind of discrimination like or related to allegations contained in the charge and *growing out of such allegations* during the pendency of the case before the Commission.'" Hill v. Western Electric Co., 672 F.2d 381, 390

6

n.6 (4th Cir. 1982) (citations omitted). Retaliation for filing an EEOC charge necessarily "grows out of" the very allegations that give rise to the retaliation, and the consensus among federal courts of appeal support such a conclusion. Nealon, 958 F.2d at 590 (quoting Malhotra v. Cotter & Co., 885 F.2d 1305, 1312 (7th Cir. 1989)). Here, Coles' second EEOC charge asserted retaliation whereby his former employer interfered with his then current employment. According to the allegations in the Amended Complaint, each subsequent retaliation followed the same pattern of warning Coles' new employer about the EEOC charge. Indeed, Ruse purportedly told the owner of Crown Marine that he "had faxed a copy of Mr. Coles' EEOC charge to Mr. Crown and to just about every other boatyard in the Deltaville area." (Am. Compl. ¶ 19.) Although the EEOC charge itself appears to report a single, isolated incident, any pattern of similar misconduct naturally "grow[s] out of such allegations during the pendency of the case."[2] Hill, 672 F.2d at 390.

Second, as a practical matter, courts are cautious not to discourage a putative plaintiff's exercise of Title VII rights out of fear of retaliation. "Having once been retaliated against for filing an administrative charge, the plaintiff will naturally be gun shy about inviting further retaliation." Nealon, 958 F.2d at 590 (quoting Malhotra v. Cotter & Co., 885 F.2d 1305, 1312 (7th Cir. 1989)). Although Deltaville argues that such a rule applies only to *current* employers, there is no such limiting language in Nealon. (Def.'s Reply at 8.) Indeed, such a limitation

---

[2]Defendant relies on Chacko v. Patuxent Institution, 429 F.3d 505 (4th Cir. 2005), to argue that Coles' failure to mark the box "continuing action" forecloses the subsequent retaliation from coming within the scope of the EEOC charge. (Def.'s Br. Sup. Mot. Dismiss ("Def.'s Br.") at 6; Def.'s Reply Sup. Mot. Dismiss ("Def.'s Reply") at 6.) Significantly, Chacko involved claims of a hostile work environment which, by its nature, necessarily requires "continuing action." A retaliation claim, however, might involve but a single act.

would conflict with Robinson v. Shell Oil Co., 519 U.S. 337 (1997), which held that Title VII's definition of employer includes both current and *former* employees. Id. at 346. Here, where the former employer allegedly persisted in retaliation as a direct result of the employees' decision to file an EEOC charge, the employee's fear of further retaliation favors application of the rule in Nealon. Indeed, such retaliation may have had its intended effect, leading Coles to refrain from filing further charges. Nealon cautions courts against rewarding a retaliatory employer with such a consequence.

Upon curing his failure to *plead* the scope of his efforts to exhaust his administrative remedies, Coles will have also sufficiently demonstrated that he has, *in fact*, sufficiently exhausted those remedies to assert his Title VII retaliation claim.[3] The rationale in Nealon applies with equal force here, such that he may raise retaliation claims for the first time in this Court. Nealon, 958 F.2d at 590; see also Jones v. Calvert Group, Ltd., 551 F.3d 297, 304 (4th Cir. 2009) (refusing to make a distinction from Nealon where the same "practical concerns" justify excusing the plaintiff from filing an additional EEOC charge). Therefore, the Court denies Deltaville's motion to dismiss for lack of subject matter jurisdiction on the basis that Coles failed to exhaust his administrative remedies, in fact.

---

[3]It is arguable that the rule in Nealon actually relieves Coles of the pleading requirement, *supra* at section II(B)(1). However, because the first prong of analysis in Nealon concludes that retaliation in violation of Title VII necessarily "grows out of" the filing of a Title VII EEOC charge, the scope of the original charge is relevant to determine whether Nealon exception applies. Indeed, if the original charge alleged only age discrimination, for example, a claim for retaliation in violation of Title VII might not fall within the exception because it would far exceed the scope of the EEOC charge. See, e.g., Sloop v. Memorial Mission Hosp., Inc., 198 F.3d 147, 149 (4th Cir. 1999).

# III. FAILURE TO STATE A CLAIM

Because the Court concludes that it may properly exercise jurisdiction over the subject matter of Coles' claims, it must now address the issues raised by Deltaville's motion made pursuant to Fed. R. Civ. P. 12(b)(6).

## A. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) "tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citation omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Matkari, 7 F.3d at 1134. Legal conclusions, however, are not afforded such deference. Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009).

## B. Discussion

Deltaville challenges the sufficiency of Coles' pleading on four different grounds. First,

Deltaville argues that the Amended Complaint does not state a plausible claim that Coles' termination from each of his successive employers was *because of* the protected activity. Second, with respect to Coles' Title VII claim, Deltaville argues that Coles has failed to plead facts which, if true, would render Deltaville an "employer" subject to Title VII. Next, Deltaville challenges whether the facts pleaded could render it liable for the actions of Ruse. Finally, the motion seeks to dismiss any part of Coles' multiple claims that seek relief pursuant to 42 U.S.C. § 1981(a)(1) because, in fact, no such statutory provision providing for relief exists. The Court addresses each of these arguments in turn.

### (1) Termination of Coles' Employment

Title VII prohibits employers from "discriminat[ing] against any of [its] employees . . . *because* [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a) (emphasis added). The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action. Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). As part of the causal link, a plaintiff must show that "retaliatory animus" motivated the contested action. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 290-91 (4th Cir. 2004). A plaintiff establishes unlawful retaliation in violation of 42 U.S.C. § 1981 in the same manner as such claims brought pursuant to Title VII. Aleman v. Chugach Support Servs., Inc., 485 F.3d 206, 213-14 (4th Cir. 2007) (citing Jackson v. Birmingham Bd. of Ed., 544 U.S. 167, 174-75 (2005) and Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 543 (4th Cir. 2003)).

Coles asserts retaliation claims pursuant to both statutes. Moving to dismiss both claims,

Deltaville argues that Coles fails to satisfy the third element -- the causal link. Specifically, and with respect to each of his subsequent employers, Deltaville argues that the pleading alleges neither retaliatory intent on Ruse's part; nor that the retaliatory conduct caused Coles to be terminated.

As to the necessary element of retaliatory intent, the Court is satisfied that such intent can be reasonably inferred from the specific statements allegedly made by Ruse, so as to "survive" a motion made pursuant to Fed. R. Civ. P. 12(b)(6). Dispositive relief is "'seldom appropriate in cases wherein particular states of mind are decisive as elements of [a] claim or defense.'" Ballinger v. North Carolina Agricultural Extension Service, 815 F.2d 1001, 1005 (4th Cir. 1987) (citations omitted). Accordingly, "courts must take special care in cases such as the instant one because motive often is the critical issue in employment discrimination cases." Id. Such caution is even more warranted in resolving a motion to dismiss, as opposed to a motion for summary judgment, because the plaintiff has no evidentiary burden at this stage and has not yet had an opportunity to engage in discovery. See, e.g., Moore v. Flagstar Bank, 6 F. Supp. 2d 496, 501 (E.D. Va. 1997) (citing Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 190 (4th Cir. 1997)).

According to the Amended Complaint, Ruse told some of Coles' subsequent employers to "be careful," to "watch out," and that he "intended to prevent Mr. Coles from ever working at a boatyard in Deltaville again." (Am. Compl. ¶¶ 14, 20, 23, 24.) In connection with such activity, Ruse also allegedly faxed a copy of the EEOC charge to every local employer in the industry. (Id. ¶ 19.) In response to such information, and in the process of terminating him, one of Coles' subsequent employers exclaimed "I suppose you are going to file a charge against me like you did against Mr. Ruse." (Id. ¶ 18.) One may reasonably infer from such a statement that

11

Ruse did not describe Coles' protected activity in a particularly favorable light.[4]  Assuming that each allegation is true, and viewed in the light most favorable to Coles, one may reasonably infer that Ruse was informing each of Coles' new employers about the EEOC charge in order to prevent Coles from obtaining employment, and that such acts constitute direct retaliation for filing the EEOC charge.  Indeed, it is impossible to distinguish Ruse's alleged actions from the EEOC charge because those very acts involved dissemination of the charge itself.

Turning now to the element of causation, the Court must first clarify the issue. According to 42 U.S.C. § 2000e-3(a), an action constitutes unlawful retaliation if taken "because [the employee] has made a charge."  In essence, the requirement is that "but for" *the charge*, the employer would not have taken the action.  Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985) (emphasis added), *overruled on other grounds by* Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).  However, Deltaville asks this Court to take the causation element a step further, requiring Coles to demonstrate that "but for" the retaliatory acts, Coles would not have been terminated.  (Def.'s Br. at 8, 9, 10.)  Numerous courts have explicitly rejected such a

---

[4]Deltaville characterizes such a conclusion as a "bald assumption."  The Court, however, characterizes such conclusions as "reasonable inferences," which a court must draw in favor of a plaintiff when resolving a motion pursuant to Fed. R. Civ. P. 12(b)(6).  See Iqbal, 129 S. Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged") (emphasis added).

rule, and this Court concurs in their reasoning.[5]

Here, the facts, as plead, sufficiently establish that "but for" the first EEOC charge, Ruse would not have disseminated such information to Coles' subsequent employers. Indeed, the very EEOC charge filed by Coles was, itself, the subject of each alleged communication. According to the pleading at issue, Ruse faxed a copy to each and every boatyard in the geographical area in which Coles sought employment with the stated purpose of preventing him from obtaining such employment. (Am. Compl. ¶¶ 16, 19, 20, 25, 48.) Had Coles never filed the EEOC charge, the alleged actions of Deltaville's owner could not have occurred, at least insofar as each action concerned the charge itself. Thus, the causation element is satisfied.

The issue is admittedly more constrained with regard to Coles' employment at Schroeder Yacht Systems, though the allegation of retaliation is not "frivolous," as Deltaville contends. (Def.'s Reply at 11.) Unlike the events involving his other employers, Coles never saw Ruse or a copy of his EEOC charge at Schroeder Yacht Systems. (Pl.'s Br. at 24.) The only allegation that could establish retaliatory conduct directed at his employment with Schroeder Yacht Systems is

---

[5] Hillig v. Rumsfeld, 381 F.3d 1028, 1033 (10th Cir. 2004) (former employer intended to harm plaintiff's future employment prospects but was ineffective); Harris v. Prince George's County Pub. Sch., Case No. 96-2785, 1998 U.S. App. LEXIS 7703 at *7 (4th Cir. April 20, 1998) (citing Smith v. St. Louis Univ., 109 F.3d 1261, 1266 (8th Cir. 1997) ("Dissemination of negative employment references for retaliatory motives can constitute a violation of Title VII"); EEOC v. L.B. Foster Co., 123 F.3d 746, 754 (3rd Cir. 1997) ("[E]mployer who retaliates cannot escape liability merely because the retaliation falls short of its intended result"); Hashimoto v. Dalton, 118 F.3d 671, 676 (9th Cir. 1997) (adverse job reference violates Title VII but its impact is an issue of damages); Smith v. Secretary of Navy, 659 F.2d 1113, 1120 (D.C. Cir. 1981) (same); Pantchenko v. C.B. Dolge Co., 581 F.2d 1052, 1055 (2nd Cir. 1978) (refusal to provide reference); Rutherford v. American Bank of Commerce, 565 F.2d 1162, 1166 (10th Cir. 1977) (prospective employer informed of applicant's EEOC charge); Beckham v. Grand Affair of North Carolina, 671 F. Supp. 415, 419 (W.D.N.C. 1987) (causing arrest of former employer); Sparrow v. Piedmont Health Sys. Agency, Inc., 593 F. Supp. 1107, 1119 (M.D.N.C. 1984) (refusal to provide recommendation violates Title VII, but damages require proof of intended result).

the allegation that Ruse faxed the EEOC charge to every boatyard in the Deltaville geographic area. (Am. Compl. ¶¶ 19, 25, 48.) However, the Court can only assume that Schroeder Yacht Systems is located the Deltaville, Virginia area, but cannot reasonably infer such a fact because there is no factual allegation of Schroeder's location. If Schroeder Yacht Systems is alleged to be within the scope of those employers receiving the widely disseminated fax from Deltaville, the Court could reasonably infer that retaliation included that particular employer.

For this reason, the Court will grant the motion to dismiss to the extent that Coles seeks damages for his termination at Schroeder, but the Court also grants leave to amend so that Coles may address the issue, assuming he can. The motion to dismiss for the supposed failure to allege the necessary elements of causation and intent is otherwise denied.

**(2)     Deltaville's Status as an "Employer" Subject to Title VII**

An employer must exceed a threshold employment of fifteen employees for each working day in twenty or more calendar weeks during the current or preceding calendar year in order to be subject to the relevant statutory strictures of Title VII. 42 U.S.C. § 2000e(b). The requirement is an element of every employee's claim for relief pursuant to Title VII. Arbaugh v. Y & H Corp., 546 U.S. 500, 516 (2006). Contrary to Deltaville's position, such allegations must assert only that the employer met the employee threshold requirement "at the time of the alleged retaliation." Walters v. Metro. Educ. Enterprises, Inc., 519 U.S. 202, 205 (1997).[6] Deltaville seeks to dismiss Coles' Amended Complaint because it does not plead that Deltaville employed more than fifteen

---

[6]Contrary to the holding in Walters, Deltaville argues that Coles must plead that the threshold is satisfied "at the time Plaintiff filed his EEOC charge in 2005, at the times Deltaville Boatyard allegedly violated Title VII, and at the time this action was filed." (Def.'s Br. at 6.) According to the holding in Walters, however, only those "times Deltaville Boatyard allegedly violated Title VII" are relevant to the threshold employee analysis. Walters, 519 U.S. at 205.

14

employees so as to exceed the threshold requirement throughout the sequence of events. (Def.'s Br. at 6-7.) Indeed, the pleading is devoid of any factual allegations concerning the fifteen employee threshold, and it must therefore be dismissed.

However, at the pleading stage, a plaintiff is required merely to allege "factual content that allows the court to draw the *reasonable inference* that the defendant is liable." Iqbal, 129 S. Ct. at 1949 (emphasis added) (citation omitted). To that end, Coles has attached to his opposition brief the EEOC determination letter responding to his second EEOC charge, which states that "Respondent [i.e. Deltaville] is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended." (Pl.'s Br. at Ex. 2). The conclusion in EEOC's determination letter required that, at the time of the alleged retaliation as set forth in the second EEOC charge, Deltaville satisfied the fifteen employee threshold. Such a conclusion gives rise to a *reasonable inference* of such a fact, sufficient to defeat Deltaville's motion to dismiss.

Although the Court must dismiss the Plaintiff's claims for failure to plead facts that establish satisfaction of the fifteen employee threshold requirement, the Court also finds that the deficiency can be readily addressed by attaching the EEOC determination to the pleading. Therefore, the Court grants Coles leave to rectify the deficiency by including same in any amended pleading as he may submit.

**(3) Deltaville's Liability for Ruse's Actions**

Deltaville also challenges whether Coles sufficiently pleads facts establishing that Ruse was acting within the scope of his authority on behalf of Deltaville when he engaged in the allegedly retaliatory conduct. (Def.'s Br. at 10.) In response, Coles relies on Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 758 (1998), to establish that as Deltaville's owner, Ruse is its "alter

15

ego," therefore exposing Deltaville to vicarious liability.

"An employer may be liable for both negligent and intentional torts committed by an employee within the scope of his or her employment," including violations of Title VII. Id. at 756. As the Supreme Court has recognized in the Title VII context, "[s]cope of employment does not define the only basis for employer liability under agency principles," and employer liability also includes situations where "'the master intended the conduct or the consequences.'" Id. at 758 (quoting Restatement (Second) of Agency § 219(2)(a)). The rule may apply if "the agent's high rank in the company makes him or her the employer's alter ego." Id. (quoting Restatement (Second) of Agency § 219 cmt. e).

Here, Coles has alleged that Ruse is the owner of Deltaville. (Am. Compl. ¶ 13.) Alone, such an allegation is generally insufficient to establish that such an individual is the "alter ego" of the company that he owns. See Terry v. Yancey, 344 F.2d 789, 790 (4th Cir. 1965) (recognizing the legal distinction between a shareholder and a corporation). But the Court need not rely on Coles' "alter ego" theory of vicarious liability because Ruse's status as Deltaville's owner, considered with the other facts and circumstances alleged in the Amended Complaint, give rise to a reasonable inference that his actions were undertaken on behalf of Deltaville, and are, therefore, within the scope of his agency.

For instance, the Amended Complaint indicates that Deltaville and each of Coles' subsequent employers are all within the same industry -- boat painting, repair, and related boatyard services. (Am. Compl. ¶¶ 6, 12, 21, 28, 35, 43.) The pleading further indicates that Ruse specifically and intentionally targeted other boatyards, faxing copies of the EEOC charge to all boatyards in the Deltaville, Virginia area with the stated intention of preventing Coles from

finding a job "at a boatyard in Deltaville again." (Am. Compl. ¶¶ 19, 20, 25.) As an owner of a boatyard himself, his intentional targeting of others in the industry, limited to his own company's geographical area, gives rise to the reasonable inference that the alleged misconduct occurred in a representative capacity. One cannot expect that each of Coles' subsequent employers did not understand that the communication emanated from the owner of a colleague, competitor, or both. And of course, the very EEOC charge that Ruse allegedly provided to the other boatyards names Deltaville -- not Ruse -- as the target of the allegations therein. (Pl.'s Br. at Ex. 1.) Indeed, nowhere in the EEOC charge is Ruse named in any capacity.

Ruse did not contact each subsequent employer as a generic owner of an unrelated business that formerly employed Coles. Rather, he contacted each as a member of their own industry and community, because he is the owner of Deltaville. Moreover, he informed them, not of an allegation against him personally, but of an allegation against his company. Assuming that such allegations are true, and viewing them in the light most favorable to the Plaintiff, as the Court must at this stage, one may reasonably infer that Ruse was acting within the scope of his employment, and on behalf of Deltaville. The motion to dismiss on such a basis must, therefore, be denied.

  **(4)  42 U.S.C. § 1981(a)(1)**

The Court agrees with Deltaville that no such statutory provision as "42 U.S.C. § 1981(a)(1)" exists. Thus, to the extent that Coles seeks relief pursuant to a non-existent subsection, any such claim for relief must be dismissed. The Court further agrees, however, that the isolated reference to the non-existent code section has no impact on whether Coles nevertheless states a claim for relief in either Count I or Count II of his Amended Complaint, as

17

the citation is merely intended to reference those remedies permitted pursuant to 42 U.S.C. § 1981. Moreover, the Court grants Coles leave to address what was presumably a clerical error.

## IV. CONCLUSION

For the reasons discussed herein, Defendant's motion to dismiss (Docket No. 10) is GRANTED, in part, and DENIED, in part. The Plaintiff's Amended Complaint is DISMISSED, without prejudice, and the Court hereby GRANTS the Plaintiff leave to amend his pleading to address the various issues discussed herein.

An appropriate Order shall issue.

                                                         /s/
                                     Dennis W. Dohnal
                                     United States Magistrate Judge

Richmond, Virginia
Dated: February 14, 2011