**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **COREY L. COLES,** ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **DELTAVILLE BOATYARD, LLC,** ) <br> ) <br> Defendant. ) <br> ) | **CIVIL NO. 3:10cv491-DWD** |

## MEMORANDUM OPINION

This matter is before the Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1) on the Defendant's Motion for Summary Judgment (Docket No. 33) The matter has been thoroughly briefed and the Court has entertained oral argument. For the reasons set forth herein, the Court has DENIED the Defendant's Motion for Summary Judgment by Order entered May 3, 2011 (Docket No. 68).

### I. BACKGROUND

The parties have submitted their respective statements of undisputed material facts pursuant to the Court's Local Rules, and the Court has reviewed the statements, including the references to supporting evidence. As required, the Court resolves all genuine disputes of material fact in favor of the non-moving party and disregards those factual assertions that are immaterial to the resolution of the pending motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Applying this standard, the Court concludes that the following narrative

1

represents the facts for purposes of resolving the motion for summary judgment.[1]

Deltaville Boatyard, LLC ("Deltaville Boatyard" or "Defendant") hired Corey L. Coles ("Coles" or "Plaintiff") as a boat painter on June 8, 2004, where he continued to work until his employment was terminated on May 9, 2005. (Def.'s Br. Sup. Mot. Sum. J. ("Def.'s Br.") at 4; Pl.'s Br. Opp'n Mot. Sum. J. ("Pl.'s Opp'n") at 2.) Less than two weeks later, on May 19, 2005, Coles accepted a similar position with Crown Marine, Inc. ("Crown Marine").

On or about May 26, 2005, Coles filed an Equal Employment Opportunity Commission ("EEOC") charge against Deltaville Boatyard (the "EEOC charge"), alleging that throughout his employment with the company he was subjected to racial discrimination, eventually leading to his termination. (Second Am. Compl. Ex. A.) At some point between June 3 and June 8, 2005, Deltaville Boatyard received a copy of the EEOC charge. (Def.'s Br. at 5.) Keith Ruse ("Ruse"), the owner of Deltaville Boatyard, then informed his employees of the charge (Transcript of the Deposition of Keith Ruse ("Ruse Dep.") at 20:5-8.) Ultimately, the EEOC did not authorize Coles to file a lawsuit based on the allegations in this charge, and the allegations therein are not the subject of the matter presently before this Court.

On June 8, 2005, just days after receiving the EEOC charge, Ruse discussed the EEOC charge with John "Bubbie" Crown ("Crown"), the owner of Crown Marine, most likely at a local convenience store known as "The Little Sue." (Ruse Dep. at 32:10-33:22; Transcript of the Deposition of John "Bubbie" Crown ("Crown Dep.") at 6:7-17.)[2] During this conversation, Ruse

---

[1] Plaintiff concedes that there is no genuine issue of material fact regarding many, but not all, of those facts set forth in the Defendant's statement of facts. (Compare Pl.'s Opp'n at 2 with Def.'s Br. at 4-14.) Accordingly, the Court accepts those facts admitted as true and recites them herein only to the extent material to the resolution of the pending motion for dispositive relief.

[2] The reference to "The Little Sue" cannot be found in either cited deposition transcript, but was represented to the Court during oral argument.

warned Crown that he might face a similar EEOC charge as a result of employing Coles. (Id.)
At oral argument, Deltaville characterized this conversation as one in which each employer "vented" about the problems each was then facing. In doing so, Ruse explained to Crown that he should "proceed with restraint and caution" in dealing with his new employee, Corey Coles. (Ruse Dep. 34:18-21.) Later that same day, Ruse faxed a copy of Coles' EEOC charge to Crown's offices. (Ruse Dep. at 18:11-15; Crown Dep. at 5:17-20.) Ruse and Crown do not maintain a close relationship in which they frequently communicate with each other, giving rise to a reasonable inference that Ruse made a special effort to convey this information to Crown. (Ruse Dep. 32:24-33:2, 34:16-17.)

Five months later, on November 8, 2005, Crown Marine terminated Coles' employment. (Crown Dep. at 4:19-5:1.) When it did so, Crown posed the following question to Coles: "What are you going to do? Are you going to file a charge now against me like you did Keith [Ruse]?" (Transcript of the Deposition of Corey Coles ("Coles Dep.") at 18:4-8). This comment by Crown was one of the last of several inquiries concerning Coles' charge against Deltaville Boatyard throughout Coles' employment with Crown Marine. (Crown Dep. at 14:25-15:2.)

Approximately one week after losing his job at Crown Marine, Coles obtained employment with Deagles Boatyard, Inc. ("Deagles"), again as a boat painter. At some point shortly thereafter, Ruse called Deagles' owner, Janie Ruark, to discuss Coles' EEOC charge then pending against Deltaville. (Transcript of the Deposition of Janie Ruark ("Ruark Dep.") at 10:9-16, 11:14-19.) In doing so, he stated that "I hope he doesn't do to you what he did to me," and "I hope you don't get in the same *trouble* I'm in." (Ruark Dep. 11:14-15, 12:25-13:1 (emphasis added).) The reasonable inference here is that Ruse warned Ruark that by employing Coles, she

was at risk of facing the same "trouble" that he then faced.[3]

Coles filed the lawsuit presently before the Court asserting that Deltaville's contact with his subsequent employers constitutes unlawful retaliation in response to his EEOC charge against it.[4]

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue of material fact" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Thus, the court must view the record in the light most favorable to the nonmoving party, and must draw all reasonable inferences in its favor. See Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002). However, "the mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Anderson, 477 U.S. at 252; see also Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008). Accordingly, to deny a motion for summary judgment, "[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate to support a jury verdict." Thompson v. Everett, Inc. v. Nat'l Cable Adver., LP, 57 F.3d 1317, 1323 (4th Cir. 1995).

---

[3] The transcript of the deposition of Richard Farinholt, the owner of Deagles' successor business, Chesapeake Marine Railway, LLC, has also been submitted as part of the record in support of Deltaville's Motion for Summary Judgment (Docket No. 48-1). However, the facts contained therein are not material to the resolution of the motion, so they are not set forth herein.

[4] Both Plaintiff and Defendant spend a great deal of their statements of fact discussing the unemployment compensation proceedings held before the Virginia Employment Commission. These proceedings are not material to the Court's resolution of the Defendant's Motion for Summary Judgment, so those facts are not set forth herein.

4

## III. DISCUSSION

Title VII prohibits employers from "discriminat[ing] against any of [its] employees . . . *because* [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a) (emphasis added). The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action. Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). As part of the causal link, a plaintiff must show that "retaliatory animus" motivated the contested action. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 290-91 (4th Cir. 2004). A plaintiff establishes unlawful retaliation in violation of 42 U.S.C. § 1981 in the same manner as such claims brought pursuant to Title VII. Aleman v. Chugach Support Servs., Inc., 485 F.3d 206, 213-14 (4th Cir. 2007) (citing Jackson v. Birmingham Bd. of Ed., 544 U.S. 167, 174-75 (2005) and Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 543 (4th Cir. 2003)). The Supreme Court has recognized that such retaliation may be the result of a former employer's attempts to interfere with a former employee's subsequent employment. Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997).

Defendant argues that there is little, if any, evidence that the allegedly retaliatory acts *caused* Plaintiff's subsequent employers to fire him. Contrary to the arguments in the Motion for Summary Judgment, this issue affects damages, not liability, and is therefore not dispositive of the case. Indeed, this distinction between causation as an element of a retaliation claim, as opposed to causation of damages, was addressed in the Court's Memorandum Opinion resolving the Defendant's Motion to Dismiss. As the "law of the case," the Court's previous legal conclusions counsel against the argument posed by the Defendant in its Motion for Summary

5

Judgment. See Walker v. Kelly, 589 F.3d 127, 137 (4th Cir. 2009). Even if the "law of the case" were not so, the Court would be compelled to deny dispositive relief because sufficient evidence exists to submit this matter to the trier of fact.

## A. The "Law of the Case" Doctrine

Pursuant to the "law of the case" doctrine, when a court construes a rule of law, such construction "should continue to govern the same issues in subsequent stages of the same case." United States v. Aramony, 166 F.3d 655, 661 (4th Cir. 1999) (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 815-16 (1988)). The purpose of this rule is to promote judicial economy and finality throughout the course of litigation, leaving for the Court of Appeals to review discrete conclusions of law, rather than several variations thereof in a single case. See Walker, 589 F.3d at 137. It "protect[s] against the agitation of settled issues," which the parties might otherwise litigate repeatedly throughout a single case. Christianson, 486 U.S. at 816 (quoting 1B James Wm. Moore et al., Moore's Federal Practice, ¶ 0.404[1] (1984)). "Perpetual litigation of any issue . . . delays, and therefore threatens to deny, justice." Id. at 816 n.5.

In its Motion to Dismiss (Docket No. 10), Deltaville Boatyard previously argued that Coles had failed to plead facts to establish that the retaliatory acts led his subsequent employers to terminate his employment. Rejecting this argument, this Court explained the distinction between causation as an element of a retaliation claim versus causation as it concerns a plaintiff's damages:

> Turning now to the element of causation, the Court must first clarify the issue. According to 42 U.S.C. § 2000e-3(a), an action constitutes unlawful retaliation if taken "because [the employee] has made a charge." In essence, the requirement is that "but for" *the charge*, the employer would not have taken the action. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985) (emphasis

6

added), *overruled on other grounds by* Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). However, Deltaville [Boatyard] asks this Court to take the causation element a step further, requiring Coles to demonstrate that "but for" the retaliatory acts, Coles would not have been terminated. (Def.'s Br. at 8, 9, 10.) Numerous courts have explicitly rejected such a rule, and this Court concurs in their reasoning.

(Docket No. 23 at 12-13.) Footnote 5, at the end of the above paragraph, set forth a lengthy "collecting cases" citation on this point:

> Hillig v. Rumsfeld, 381 F.3d 1028, 1033 (10th Cir. 2004) (former employer intended to harm plaintiff's future employment prospects but was ineffective); Harris v. Prince George's County Pub. Sch., Case No. 96-2785, 1998 U.S. App. LEXIS 7703 at *7 (4th Cir. April 20, 1998) (citing Smith v. St. Louis Univ., 109 F.3d 1261, 1266 (8th Cir. 1997) ("Dissemination of negative employment references for retaliatory motives can constitute a violation of Title VII"); EEOC v. L.B. Foster Co., 123 F.3d 746, 754 (3rd Cir. 1997) ("[E]mployer who retaliates cannot escape liability merely because the retaliation falls short of its intended result"); Hashimoto v. Dalton, 118 F.3d 671, 676 (9th Cir. 1997) (adverse job reference violates Title VII but its impact is an issue of damages); Smith v. Secretary of Navy, 659 F.2d 1113, 1120 (D.C. Cir. 1981) (same); Pantchenko v. C.B. Dolge Co., 581 F.2d 1052, 1055 (2nd Cir. 1978) (refusal to provide reference); Rutherford v. American Bank of Commerce, 565 F.2d 1162, 1166 (10th Cir. 1977) (prospective employer informed of applicant's EEOC charge); Beckham v. Grand Affair of North Carolina, 671 F. Supp. 415, 419 (W.D.N.C. 1987) (causing arrest of former employer); Sparrow v. Piedmont Health Sys. Agency, Inc., 593 F. Supp. 1107, 1119 (M.D.N.C. 1984) (refusal to provide recommendation violates Title VII, but damages require proof of intended result).

(Docket No. 23 at 13 n.5.) Thus, as this Court has concluded, causation in a retaliation claim centers on whether the protected activity led to the retaliatory act, not whether the retaliatory act caused the injury. The latter issue deals with damages, not liability. See, e.g., Martin v. Inclusion, Inc., No. CV-05-156-S-BLW, 2007 U.S. Dist. LEXIS 18110, at *9 (D. Idaho March 13, 2007) ("Damages are not an element of a claim under Title VII") (citing Hashimoto v. Dalton, 118 F.3d 671, 676 (9th Cir. 1997)).

Here, however, Deltaville Boatyard's principle argument in support of summary judgment is that Coles cannot establish that its allegedly retaliatory contact with his subsequent

7

employers was the reason that any one of them terminated his employment. (Def.'s Br. at 14-18.) Because this Court has already concluded that this issue impacts damages, not liability, the law of the case counsels against dispositive relief on that basis. Moreover, as the Court will now explain, it rejects Deltaville Boatyard's arguments regardless of the finality of its previous ruling.[5]

**B.      Distinction between "Injury or Harm" and "Damages"**

Deltaville Boatyard cites a single unpublished Fourth Circuit opinion for the proposition that to maintain an action for retaliation, Coles must be able to show that Deltaville Boatyard's retaliatory acts caused him to lose his subsequent employment. (Def.'s Br. at 14-15 (citing Gnadt v. Castro, No. 95-1369, 1997 U.S. Dist. LEXIS 17333 (4th Cir. 1997).) In that case, the Fourth Circuit evaluated the district court's assessment of the issue on a motion for judgment as a matter of law after trial, which the district court had previously framed as follows:

> What the Court has to look at with retaliation is whether or not there is any evidence in the case that the defendant interfered with any prospective employment opportunities for the employee, and there is absolutely no evidence of that *other than a threat* by [the defendant] to keep the plaintiff from ever getting a law job. [The plaintiff], herself, admitted several times that she had no evidence whatsoever that any phone calls, or any contacts, or any actions had been taken by the defendant to in any way interfere with prospective business, educational, or other kinds of activities.

Gnadt, 1997 U.S. Dist. LEXIS 17333 at *7-8 (emphasis added).

---

[5] Deltaville Boatyard also suggests that this Court may not exercise subject matter jurisdiction over the discrete act of retaliation that may have resulted from Ruse informing Deltaville Boatyard's employees about the EEOC charge. (Def.'s Reply Br. Sup. Mot. Sum. J. ("Def.'s Reply") at 11 n.2.) This argument ignores this Court's previous conclusion on the issue of subject matter jurisdiction, holding that "any pattern of similar misconduct naturally 'grow[s] out of such allegations during the pendency of the case.'" (Docket No. 23 at 7 (quoting Hill v. Western Electric Co., 672 F.2d 381, 390 (4th Cir. 1982).) Although the "law of the case" doctrine does not generally apply to subject matter jurisdiction, see Am. Canoe Ass'n v. Murphy

8

Gnadt is easily distinguishable from the present case because the retaliatory acts in that case were mere threats to contact prospective employers -- *no action was taken on the threats*. Here, on at least two occasions, Deltaville Boatyard's owner, Keith Ruse, actually contacted Coles' subsequent employers, in one such instance provided Coles' prior EEOC charge to his new employer, and warned each to "watch out you may have to deal with the same thing some day in [*sic*] you're not careful." (Crown Dep. at 6:14-17; Ruark Dep. at 12:25-13:1.) For that reason alone, the holding in Gnadt would not appear to govern the case presently before this Court.

Deltaville Boatyard is correct, however, that Gnadt also addressed the issue of whether an employee can obtain relief where there is no proof that the alleged retaliation had "*any effect*" on a plaintiff. 1997 U.S. Dist. LEXIS 17333 at *9 (emphasis in original). Explaining the relevance of this question, the Court stated:

> [T]he only appellate argument available to [the Plaintiff] is that an employer's *threats alone*, which the employee is unable to prove had *any effect at all* on her, can constitute a basis for a Title VII retaliation claim. Neither EEOC nor [the plaintiff] has cited any case so holding and we have found none. It is difficult to envision such a case in view of the fact that Title VII, as amended in 1991, permits the award of compensatory damages only for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses," 42 U. S. C. § 1981a(b)(3), *not* for no loss at all.

Gnadt, 1997 U.S. Dist. LEXIS 17333 at *9-10 (emphasis added). But as this excerpt readily demonstrates, the holding in Gnadt addressed the unique combination of "threats alone" *and* no "effect at all" on the employee. Id. (emphasis added). By concerning itself with mere threats which had no impact on the employee's subsequent employment, Gnadt's holding more

---

Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003), the Court sees no reason to disturb its previous ruling and, therefore, will permit Coles to submit additional evidence of retaliatory conduct.

9

fundamentally addressed the element of adverse employment action, not simply whether such adverse employment action was the result of protected activity. Threats alone were insufficient because they were not acted upon, and the threats alone did not otherwise lead to any adverse employment action.

Here, Deltaville Boatyard relies on the deposition testimony of several of Coles' subsequent employers to argue that he was terminated from each subsequent position due to poor performance, not his EEOC charge against Deltaville Boatyard. Even if true, such an argument would have no effect on whether there is a genuine issue of material fact concerning the availability of other types of compensatory damages set forth at 42 U.S. C. § 1981a(b)(3). At best, it would indicate that no such damages resulted from his subsequent termination. But Coles has, indeed, submitted admissible evidence of other available damages, such as "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses," as well as punitive damages, all of which are available pursuant to § 1981a(b)(3). (Pl.'s Opp'n Ex. 1, Declaration of Corey Coles at ¶¶ 37, 56-63, 86-96, 100-102.)[6] So although damages are not required for Coles to establish the "harm" element pursuant to <u>Burlington</u>, he has nonetheless proffered more than a "mere scintilla" of evidence that he suffered some compensable damages.

More fatal to Deltaville Boatyard's argument is the fact that it relies on this lone, unpublished opinion which *predates* the Supreme Court's irreconcilable holding in <u>Burlington N.</u>

---

[6] At oral argument, Plaintiff admitted that, as a result of successful mitigation of damages, his evidence of lost wages does not exceed the seven-hundred sixty-eight dollars ($768.00) lost during one week of unemployment between Crown Marine and Deagles Boatyard. (Coles Aff. at ¶ 70.) Because such damages do not affect the resolution of the Motion for Summary Judgment, the Court does not, at this time, make any finding with respect to whether such damages might have resulted from the alleged retaliation.

& Santa Fe Ry. v. White, 548 U.S. 53 (2006). In Burlington, the Supreme Court was required to "characterize how harmful an act of retaliatory discrimination must be in order to fall within the [retaliation] provision's scope." Id. at 61. Considering three different approaches taken by the appellate courts, the Supreme Court adopted the rule applied in the Seventh and District of Columbia Circuits, which asks whether the employer's act "would likely have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Id. at 61, 68 (quoting Washington v. Ill. Dep't of Revenue, 420 F.3d 658, 662 (7th Cir. 2005); also citing Rochon v. Gonzalez, 438 F.3d 1211, 1217-18 (D.C. Cir. 2006)).

At oral argument, Deltaville Boatyard likened Coles' retaliation claim to that of a hostile work environment claim, arguing that Burlington's reference to a minimum "level of seriousness" requires pervasive retaliation. 548 U.S. at 67. This argument finds no support in the text of Burlington, which specifically concluded that retaliation claims were subject to less stringent standards than discrimination claims generally because Congress chose to adopt distinct statutory language for the two claims. Id. at 61-62 (comparing 42 U.S.C. § 2000e-2(a) with 42 U.S.C. § 2000e-3(a)). This is not to say that there is no threshold over which an employer must cross to become liable for a retaliatory act, as the Supreme Court concluded that the severity of retaliation must be measured by an objective standard. Actionable retaliatory conduct is only that which "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68 (citation omitted). In drawing this conclusion, Burlington sought to exclude claims based on "normally petty slights, minor annoyances, and simple lack of good manners [which] will not create such deterrence." Id. (citing 2 EEOC 1998 Manual § 8, pp. 8-13). Certainly, an employee recently fired by one employer might be dissuaded from filing an EEOC charge for that termination if he knows that it would lead to a warning that he might do

11

the same to subsequent employers. Accordingly, the Court is satisfied that Coles meets this threshold.

## C. Deltaville Boatyard's Motives

Deltaville Boatyard's more legally accurate argument is that "[t]here will be no *credible* evidence at trial that Mr. Ruse shared that information with Mr. Crown or Mrs. Ruark because of any motivation on Mr. Ruse's part to harm Plaintiff." (Def.'s Br. at 18 (emphasis added).) While this argument accurately reflects the legal issue related to causation, it deviates from the standard of review applicable to the facts in resolving a motion for summary judgment.

Deltaville Boatyard does not assert that there is *no* evidence, or *insufficient* evidence, but that there is no "*credible*" evidence of Ruse's motivation. In resolving a motion for summary judgment, the Court may not weigh the evidence or make credibility determinations, so the Court must reject Deltaville Boatyard's argument to the extent that it is based on the *credibility* of the evidence now before the Court. See Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004) (emphasis added).

Indeed, Ruse discussed the EEOC charge with Coles' new employer, Bubbie Crown, within days of receiving the charge. (Ruse Dep. at 33:15; Ex. 2.) At his deposition, Crown explained that Ruse provided this information in order to warn him that he "may be faced with similar circumstances." (Crown Dep. 6:8-12.) Burlington is once again instructive here because, as the Supreme Court indicated, "context matters." 548 U.S. at 69. Addressing this point at oral argument, Deltaville Boatyard characterized the context as one in which its owner complained about his problems like an ill man might complain about his maladies. And in doing so, Ruse warned Crown that he might be faced with the same set of problems with Coles in his employ. (Id.) A reasonable person may infer from these facts that such a warning was given as a result of

12

Coles' filing the EEOC charge with the intent to characterize Coles as a problem employee, especially since Crown was Coles' new employer. This inference is supported by the testimony that Ruse and Crown are not close personal friends, such that Ruse "went out of his way" to make these statements to Crown. (Ruse Dep. 34:16-17.) Ruse did not complain to a friend, but specifically chose to complain to Coles' new employer.[7]

Deltaville Boatyard also attempts to frame Coles' entire case as some grandiose, paranoid, and overblown conspiracy theory allegedly hatched in secret among Ruse and the rest of the local boatyard owners. To that end, Deltaville Boatyard is correct that there is simply no evidence of such a well-organized effort on Ruse's part. But it has also been frequently observed that "[p]eople of the same trade seldom meet together, even for merriment and diversion, but the conversation ends in a conspiracy against the public." Adam Smith, <u>An Inquiry into the Nature and Causes of the Wealth of Nations</u> (Edwin Cannan, ed. 1904) (1776). Of course, this observation concerns monopolistic behavior not implicated in this employment dispute, and the author of the text was inspired by the much colder world of early industrial London, England. Deltaville, Virginia appears to be a warmer, more hospitable place where people of the same trade *do indeed* meet together for diversion, and do so without hatching "a conspiracy against the public." At oral argument, the parties agreed that the Little Sue's Convenience Store is a local hub of such activity, and the location of Ruse's conversation with Crown. But while Deltaville

---

[7] Deltaville Boatyard also contends that Ruse might have shared the EEOC charge with Coles' future employers to somehow benefit Coles, leading future employers to think twice before terminating Coles. (Def.'s Reply at 2-3.) This argument cannot be taken seriously, especially given Deltaville Boatyard's characterization of the conversation between Ruse and Crown to one in which Ruse complained about the problems in his life. It is equally reasonable to infer that the intent is to put Coles' future employer on alert to find some pretext to terminate his employment. Accordingly, the Court must construe such a reasonable inference in Coles' favor in resolving the motion. <u>Bryant</u>, 288 F.3d at 132.

Boatyard is correct that neither this scenario nor any other fact in the record supports a grand conspiracy, there is no legal requirement that Coles establish a conspiracy to maintain a retaliation claim. Accordingly, this characterization of the case has no bearing on the issue presently before the Court, one way or the other.

The Court is also mindful that Deltaville Boatyard's motion implicates the motivational element of a retaliation claim, and "summary judgment is seldom appropriate in cases wherein particular states of mind are decisive." Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (internal citations omitted); see also Marlow v. Chesterfield Cnty. Sch. Bd., 749 F. Supp. 2d 417, 437 (E.D. Va. 2010). Although Mr. Ruse might prevail in convincing this Court of his innocent motives at trial, when the Court will be permitted to weigh the evidence and evaluate his credibility, summary judgment is not appropriate on the record before the Court.

## IV. CONCLUSION

For the reasons discussed herein, the Defendant's Motion for Summary Judgment (Docket No. 33) is DENIED.

An appropriate Order has previously been issued to this effect (Docket No. 68).

/s/
Dennis W. Dohnal
United States Magistrate Judge

Richmond, Virginia
Dated: May 6, 2011