**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **COREY L. COLES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL NO. 3:10cv491-DWD** |
| ) | |
| **DELTAVILLE BOATYARD, LLC,** ) | |
| ) | |
| **Defendant.** ) | |

## <u>MEMORANDUM OPINION</u>

This matter is before the Court by consent of the parties pursuant to 28 U.S.C. §

636(c)(1) for trial, as well as the Defendant's Motion for Judgment on Partial Findings (ECF No.

98). The Court took the matter under advisement following trial (without jury) and permitted the

parties to submit post-trial briefs in lieu of oral argument,[1] in addition to submission of briefs

addressing the Defendant's post-trial motion. The matter has now been thoroughly briefed and

the Court has considered the evidence presented at trial. For the reasons set forth herein, the

Court shall DENY the Defendant's Motion for Judgment on Partial Findings.

---

[1] The parties agreed to file post-trial briefs arguing the merits of the case, as well as addressing
any post-trial motions. However, in addition to the agreed briefing, the Defendant has filed a
Post Trial Reply Brief, without leave of the Court, which the Plaintiff asks this Court to
disregard. Nevertheless, the Court has reviewed the submission at issue and concludes that it
does nothing more than debate the short-comings of the Plaintiff's pleadings, essentially
accusing him of deceit by virtue of his failure to offer proof of some of the allegations set forth
therein. The Court finds the arguments in the Post Trial Reply Brief unpersuasive and,
accordingly, the submission has no impact on the Court's resolution of the relevant issues.
Moreover, it is noted that pleadings are not filed under oath in federal court. <u>See</u> Fed. R. Civ. P.
11. Furthermore, unless a foundation is established to show otherwise, a pleading is not
necessarily a "prior statement made by the witness" so as to permit impeachment pursuant to
Fed. R. Evid. 613.

In addition, upon consideration of all the evidence and the applicable law, the Court finds, by a preponderance of the evidence, that the Defendant retaliated against the Plaintiff in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981. Accordingly, judgment is rendered for the Plaintiff in the amount of two thousand dollars ($2,000.00) for compensatory and related punitive damages for the reasons set forth herein, with an additional award of attorney's fees and costs to be determined hereafter.

## I. STANDARD OF REVIEW

In a trial without a jury, a court must make specific findings of fact and separately state its conclusions of law. Fed. R. Civ. P. 52(a)(1). The trial judge must weigh the evidence, choose from among conflicting versions of events, and draw those inferences which the court deems most reasonable. Penn-Texas Corp. v. Morse, 242 F.2d 243, 247 (7th Cir. 1957) (citation and internal quotation marks omitted). As the finder of fact, it is incumbent upon the trial court to make judgments about the reliability of witnesses by evaluating their testimony, including weighing any interests each might have in the outcome of the case, and their demeanor on the witness stand. See Burgess v. Farrell Lines, Inc., 335 F.2d 885, 889 (4th Cir. 1964); see also Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 567 (4th Cir. 1995). At the same time, the court is not required to issue findings on all facts presented during trial or make detailed evidentiary findings. Darter v. Greenville Cmty. Hotel Corp., 301 F.2d 70, 75 (4th Cir. 1962). If the findings are sufficient to support the ultimate conclusion of law, the trial court's decision will prevail. Id.

## II. FINDINGS OF FACT

Pursuant to Fed. R. Civ. P. 52(a)(1), the Court makes the following findings of fact.

1.     Deltaville Boatyard, LLC ("Deltaville Boatyard" or "Defendant") employed

Corey L. Coles ("Coles" or "Plaintiff") as a boat painter on June 8, 2004, until his employment was terminated on May 9, 2005.

2.      Less than two weeks later, on May 19, 2005, Coles accepted a similar position with another maritime entity in the same area, Crown Marine, Inc. ("Crown Marine").

**A.      EEOC Charge**

3.      On or about May 26, 2005, Coles filed an Equal Employment Opportunity Commission ("EEOC") charge against Deltaville Boatyard (the "EEOC Charge"), alleging that throughout his employment with the company he was subjected to racial discrimination that culminated in his termination.

4.      At some point between June 3 and June 8, 2005, Deltaville Boatyard received a copy of the EEOC Charge.  Keith Ruse ("Ruse"),[2] the owner of Deltaville Boatyard, thereupon informed his employees of the EEOC Charge.

5.      Ultimately, the EEOC did not authorize Coles to file a lawsuit based on the allegations in the EEOC Charge, and the allegations therein are not the subject of the matter presently before the Court.  Indeed, the only evidence in the record that the underlying discrimination claim had merit is Coles' conclusory testimony that he believed that Ruse treated him differently.  Nevertheless, the Court concludes that Coles belief that he was subjected to discrimination was sincere to a certain extent, so as to motivate him to file the EEOC Charge, and forms a basis for his claim of retaliatory activity by Deltaville Boatyard.

**B.      Dissemination of EEOC Charge to Subsequent Employers**

6.      On June 8, 2005, just days after receiving the EEOC charge, Ruse discussed the

---

[2] The parties stipulated that Ruse's actions are also the actions of Deltaville Boatyard by virtue of his ownership and management of the business.

EEOC charge with John "Bubbie" Crown ("Crown"), the owner of Crown Marine, most likely at a local convenience store known as "The Little Sue." [3]  During this conversation, Ruse warned Crown that he might face a similar EEOC charge as a result of employing Coles.  Ruse explained to Crown that he should "proceed with restraint" in disciplining Coles.  As Crown testified at trial, Ruse appeared to be angry because of the EEOC Charge filed against Deltaville Boatyard.[4]  As Ruse viewed the events, Coles had made an unfounded accusation of wrongdoing against him.  Nevertheless, Ruse testified that he did not believe that it would harm Coles when he provided the information to Crown.

7.     Later that same day, Ruse faxed a copy of the EEOC Charge to Crown's offices. Deltaville Boatyard disputes that the fax was sent by Ruse himself, asserting that "Crown's recollection is that the fax was not sent by Ruse, but rather was sent to him by the Deltaville

---

[3] The Defendant does not dispute that Ruse discussed the matter with Crown on or about this date, but challenges whether or not this was the first time that Crown first learned of the EEOC Charge.  Specifically, the Defendant points to Coles' word choice in the EEOC Charge itself, which states that "[w]hen I was initially hired I told Bubbie Crown about the [discrimination] charge that I had filed against Deltaville Boatyard."  The Court accepts Coles' explanation that his use of the word "initially" simply means early in his employment, such as the first several weeks, and that it could have, and did, occur after the June 8th conversation between Ruse and Crown.

[4] Although Ruse denies that he was angry, the Court accepts Crown's testimony to the contrary. As was established at trial, Crown has little if any interest in the dispute between Deltaville, his competitor in business, and Coles, whose employment he terminated.  Moreover, the Court finds that Crown was a generally believable witness, as he appeared to answer questions with candor. For example, Crown admitted that he was nervous in court, which is to be expected of any person unfamiliar with the legal process.  This is especially true where one is compelled to testify in a matter involving two persons with whom the witness is well-acquainted.  He also admitted that he was, himself, angry at Coles when, during the course of events in this case, he was also accused of discrimination during his employment of Coles.  This admission stands in stark contrast to Ruse's testimony, in which he attempted to obscure his own anger.  There is nothing unlawful about an employer being angry at an employee who files an EEOC charge. Indeed, one would expect discord between the parties when, as is the case here, the employer denies the allegations and considers them unfounded.  Accordingly, the Court's findings of fact rely heavily on Crown's trial testimony to resolve disagreements that exist between Coles' and Ruse's evidence.

Boatyard office manager."  (Def.'s Post-Trial Br. at 14 (citing Crown's trial testimony, Trial

Transcript at 84).)  However, such a statement is effectively refuted because, recorded on the

same page of the trial transcript, is the additional statement by Crown that he received the fax

"from Mr. Ruse, that's -- that is correct."

       8.     Five months later, on November 8, 2005, Crown Marine terminated Coles'

employment.  The Court concludes that Crown's decision was not influenced by the EEOC

Charge that Coles had filed against Deltaville Boatyard.  Rather, it resulted from Coles' frequent,

private telephone calls while "on the job" and "disappearances" on company time, coupled with

at least one instance of apparently inadequate work product.  Specifically, there was an incident

shortly before Coles' termination from Crown Marine in which a particular assignment of his

(fiberglass preparation) failed due to Coles' actions.

       9.     Approximately one week after losing his job at Crown Marine, Coles obtained

employment with yet another boatyard in the area, Deagles Boatyard, Inc. ("Deagles"), again as

a boat painter.

      10.    On February 7, 2006, Coles filed a retaliation charge with the EEOC against

Crown Marine and Deltaville Boatyard (the "Retaliation Charge").  He alleged that Ruse's

dissemination of information about the EEOC Charge was an act of retaliation which led to

Crown terminating Coles' employment.  Based upon the timeframe in which Ruse received the

first EEOC Charge, the Court reasonably infers that Ruse received the second Retaliation Charge

within two (2) weeks of it being filed.  Thus, Ruse was on notice at that time that his

dissemination of the initial EEOC Charge might be unlawful.

      11.    On or about March 1, 2006, Ruse called Deagles' owner, Janie Ruark, to discuss

Coles' EEOC charge then pending against Deltaville.  In doing so, he stated that "I hope he

doesn't do to you what he did to me," and "I hope you don't get in the same trouble I'm in."

(Transcript of the Deposition of Janie Ruark at 11:14-15, 12:25-13:1.)

    12.    The Court concludes that Ruse implied that by employing Coles, Deagles was at risk of facing the same "trouble" that Deltaville Boatyard had confronted.  That is, Coles might file an EEOC charge against Deagles.  At trial, Ruse denied that this conversation ever occurred, but in weighing the evidence, the Court does not accept his version -- the Court finds that the conversation occurred approximately as described by Ruark.[5]

    13.    In August 2006, Chesapeake Marine Railway ("Chesapeake Marine") purchased Deagles' assets, and Deagles ceased business operations.  Initially, Chesapeake Marine retained all of Deagles' employees as part of its growing operation at Deagles' former worksite.  Among those employees retained were Coles and Steve Price ("Price"), an intermediate level supervisor of Coles'.

    14.    In late August 2006, Coles saw Ruse at Chesapeake Marine.  The very next day, Coles saw Ruse return and speak with Price.  Coles never heard what was discussed between the two of them, but assumed that it involved his EEOC Charge against Deltaville, and asks the Court to infer as much.  However, the Court must consider Coles' testimony together with the transcript of the deposition of Rick Farinholt ("Farinholt"), the owner of Chesapeak Marine, in

---

[5] Ruark did not testify in person, but her deposition transcript was submitted to the Court as evidence in the case by agreement of the parties.  The Court has reviewed the entirety of the Ruark deposition transcript and, based on the testimony therein and the context in which it was presented, the Court finds her testimony highly credible and accepts it.  First, in regard to Crown, she had little if any interest in helping a competitor of hers -- Deltaville Boatyard.  Second, although she experienced some health-related memory problems, she candidly admits when she cannot recall every detail of an event.  At the same time, those details which she provides with certainty and confidence are corroborated by other testimony, suggesting that her testimony is reliable.  Accordingly, as with Crown, the Court relies on Ruark's deposition testimony to resolve factual discrepancies between the parties.

which he unequivocally denies ever discussing the EEOC Charge with Ruse, Price, or Coles before 2007.[6]  The Court credits Farinholt's deposition testimony because it is consistent with Ruse's trial testimony and there is simply no evidence in the record concerning Price's involvement in the matter.  Accordingly, the Court concludes that Farinholt did not learn about the EEOC Charge at any time during Coles' employment.

15.     In mid-October of 2006, Farinholt met with Coles and terminated his employment with Chesapeake Marine.  As for his reasons, he explained that Coles was continually late to work, absent on a few occasions, and that his work was "subpar."  The Court credits such testimony because it is consistent with that of Coles' other employers, including those subsequent to Chesapeake Marine -- Schroeder Yacht Systems, Ltd. ("Schroeder Yacht") and Zimmerman Marine, Inc. ("Zimmerman Marine").[7]

**C.     Damages**

16.     It is agreed that Coles suffered no lost wages but for one disputed week without work between his employment with Crown Marine and Deagles.  In any event, the Court credits Crown's testimony and finds that Coles' termination from Crown Marine was not the result of any information shared by Ruse.  Rather, it resulted from misuse of Coles' personal cellular phone during work, absenteeism, and at least one instance in which he did not adequately perform his job.  Accordingly, the Court concludes that Coles lost no wages as a result of any

---

[6] The parties stipulated to the admissibility of Farinholt's deposition transcript, and it was offered by the Defendant, Deltaville Boatyard, as part of its case-in-chief.

[7] By agreement between the parties, the Court has considered the affidavits of the president of Schroeder Yacht, Jeffrey Schroeder, and the president of Zimmerman Marine, Steve Zimmerman.  Both affidavits unequivocally indicate that Ruse never contacted either employer to discuss Coles and that neither learned about the EEOC Charge during the course of Coles' employment.  Both Schroeder Yacht and Zimmerman Marine terminated Coles because of similar issues, such as frequent attendance problems and problems with the quality of his work.

conduct on Deltaville Boatyard's part.

17.     Coles also argues that he suffered extensive emotional distress damages.  The Court credits such damages to only a minimal degree.  If everything to which Coles testified were true, it would appear that he suffered extensive emotional distress.  However, his evidence includes the deterioration of his personal life in a way which has little, if any, relation to his alleged problems with Deltaville Boatyard.  Accordingly, given his own exaggeration, Coles' testimony concerning his emotional damages is afforded little weight.  For example, Coles relies heavily on the testimony of Ms. Tanya Brown, the mother of his son with whom he had a committed relationship for some time.  According to Brown, there were several incidents in which Coles' fear of Ruse's retaliatory conduct led him to distance himself from her. Eventually, Coles terminated the relationship altogether in an abrupt fit of rage.  There is simply no evidence associating Coles' employment issues to his behavior towards Ms. Brown, apart from Coles' and Brown's own conclusory, speculative testimony.

18.     There is also one instance in which Coles physically disciplined his son for failing to tie his shoes, apparently with enough force to cause his son to urinate in his pants.  Without any foundation evidence whatsoever, Coles seeks to have this Court make a logical leap of faith by associating that example of excessive corporal punishment with an ongoing employment dispute.  This, the Court will not do.  And although the described conduct also appears to fall short of abuse, public policy concerns would give the Court significant pause before allowing a Title VII plaintiff to use his civil claim to shirk personal responsibility for his own parenting mistakes.  In any event, without more meaningful evidence, the Court will not place the responsibility for such an incident on Deltaville Boatyard.

19.     By his exaggeration of the supposed emotional distress resulting from Deltaville

Boatyard's retaliation against him, Coles, in fact, gives support to the challenge to such damages. In any event, the Court concludes that the emotional distress suffered was barely more than nominal.

20.    The Court further concludes that the actions of Deltaville Boatyard towards Coles did not interfere with any subsequent employment.  Nor did those events ultimately lead to Coles' decision to leave the boat repair profession altogether.  Rather, the evidence establishes that Coles obtained further employment in the industry at Schroeder Yachts and Zimmerman Marine without meaningful difficulty or delay.

### III. MOTION FOR JUDGMENT ON PARTIAL FINDINGS

Deltaville Boatyard moves for judgment on partial findings pursuant to Fed. R. Civ. P. 52(c), arguing that Coles offers no evidence of "retaliatory animus" on Ruse's part.  In apparent confusion, Deltaville Boatyard has improperly merged the concepts of "retaliatory animus," as courts have utilized that phrase, with malice.  Were the two concepts identical, then every instance of retaliation would give rise to punitive damages.  See Lowery v. Circuit City Stores, Inc., 206 F.3d 431, 441 (4th Cir. 2000) (noting that malice in Title VII cases may result in punitive damages).  Such is not the case here and, indeed, the two concepts are distinct.

For purposes of resolving a motion for judgment on partial findings, the Court must evaluate the evidence and render findings of fact in the same manner required by Rule 52(a), as the Court has attempted to do, *supra* at Section II.  With those findings of fact in mind, Rule 52(c) provides, in pertinent part, that:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.  The court may, however, decline to render any judgment until the close of the evidence.

9

Stated another way, a court may render judgment upon making a finding of fact which is, by itself, dispositive of the legal issues in the case.

To establish a prima facie retaliation claim brought pursuant to Title VII, a plaintiff must prove that: (1) he engaged in protected activity; (2) an adverse employment action was taken against him; and (3) a causal link exists between the protected activity and the adverse employment action.  Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004) (citations omitted). The same elements apply to a retaliation claim brought pursuant to § 1981.  Aleman v. Chugach Support Servs., Inc., 485 F.3d 206, 213-14 (4th Cir. 2007).  "Retaliatory motive," or "retaliatory animus," as this Court has previously referred to in this case, simply refers to the requirement that the employer be motivated by the employee's protected activity in taking the adverse action at issue.  Coles v. Deltaville Boatyard, LLC, No. 3:10cv491, 2011 U.S. Dist. LEXIS 48884, at *7 (E.D. Va. May 6, 2011).  Stated another way, the employee's protected activity must have motivated, or *caused*, the employer to take the action at issue.  Thus, the concept of retaliatory motive implicates the causation element of a retaliation claim, not whether such reactive response was undertaken with malicious intent.

Deltaville Boatyard relies on Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53 (2006), to argue that a minimal level of harm must exist in order to establish a retaliation claim, and that such harm implicitly requires evidence of "retaliatory motive."  (Def.'s Post-Trial Br. at 27-28.)  Developing this argument, the Defendant cites extensively from Burlington Northern's discussion of the magnitude of harm that an employee must suffer for an employer's action to constitute retaliation.  But in doing so, Deltaville Boatyard has confused the element of *causation* (i.e. "retaliatory motive"), with the element of an adverse employment action, which was the

element at issue in Burlington Northern.

Indeed, the Supreme Court, in Burlington Northern, explicitly framed the issue in the form of the following question: "how harmful must the *adverse action* be to fall within its scope?"  548 U.S. at 56 (emphasis added).  Thus, it is clear that the Court was not addressing the causation, or "retaliatory motive" element of the claim.  Instead, the Court sought to clarify what minimum threshold of harm that an employer's action must cause before its conduct is sufficiently adverse to constitute "adverse action" for Title VII purposes.  Resolving the question presented, the Supreme Court found that Title VII was intended "to provide broad protection from retaliation," such that "Title VII's substantive provision and its antiretaliation provision are not coterminous." Id at 67.

Once the Supreme Court concluded that antiretaliation protection is broader than the substantive protections afforded by Title VII, it then addressed what constitutes a sufficiently adverse action.  It held that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id at 68 (citations and internal quotation marks omitted).  The Court "refer[s] to reactions of a *reasonable* employee because . . . the provision's standard for judging harm must be objective." Id (emphasis in original).  Moreover, "the standard is tied to the *challenged retaliatory act*." Id at 70 (emphasis added).  Thus, the standard defines the element of adverse employment *action*, not causation or "retaliatory motive."

Here, Deltaville Boatyard argues that "[t]he evidence shows that Ruse merely told Crown about the charge . . . [and] that Ruse had no expectation that Crown would make any decision concerning Plaintiff's employment."  (Def.'s Post-Trial Br. at 29.)  The Defendant "misses the

mark" for two reasons.  First, it is his act of disseminating the information that constitutes the alleged adverse action at issue, not how Crown responded to it.  Indeed, this Court has already made a finding of fact that Crown's subsequent employment decision concerning Coles was unaffected by his knowledge of the EEOC Charge filed against Deltaville Boatyard.  Second, the standard for defining harm set forth in Burlington Northern does not implicate Ruse's subjective motives, but instead evaluates whether Ruse's actions "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington Northern, 548 U.S. at 68.  In other words, would a reasonable employee be dissuaded from filing an EEOC charge against his former employer if he knows that his former employer will inform his current employer that he has taken this step?

The Court concludes in the affirmative.  As Burlington Northern recognized, and as even Deltaville Boatyard emphasizes here, "context matters."  Id. at 69.  Here, the context involves Coles departing Deltaville Boatyard under less than favorable circumstances, suspicious that its owner discriminated against him on the basis of his race.[8]  Certainly, an employee, departing under such unpleasant circumstances, would wish to keep such ill-will from "infecting" his reputation at his next place of employment.  He would be expected to at least hesitate in filing an EEOC charge if he knows that any resulting enmity will follow him to his next job.  Thus, Ruse's actions to warn Coles' subsequent employers about the EEOC Charge against Deltaville Boatyard, taken together, constitute a series of adverse employment actions as defined in Burlington Northern.

---

[8] As Burlington Northern recognized, it is irrelevant whether Coles was correct in his belief that Ruse actually discriminated against him on the basis of his race, which was the allegation in the underlying EEOC Charge.  548 U.S. at 69 ("[T]he standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint").

For these reasons, the Court denies the Defendant's Motion for Judgment on Partial Findings, and will proceed to render its conclusions of law on the merits.[9]

## IV. CONCLUSIONS OF LAW

As the Court perceives the facts of this case, liability may be sufficiently established, but the resulting damages are far less certain.  Accordingly, the Court will address the two issues separately.  To that end, as required pursuant to Fed. R. Civ. P. 52(a)(1), the Court issues the following conclusions of law.

**A.      Liability**

1.      Title VII prohibits employers from "discriminat[ing] against any of [its] employees . . . because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title."  42 U.S.C. § 2000e-3(e).

2.      As the Court has already explained, Coles must prove three elements to establish his retaliation claim: (1) he engaged in protected activity; (2) an adverse employment action was taken against him; and (3) a causal link exists between the protected activity and the adverse employment action.  Mackey, 360 F.3d at 469; Aleman, 485 F.3d at 213-14 .  It is undisputed that Coles engaged in protected activity by filing the EEOC Charge.  Thus, only the second and third elements are at issue.

3.      The Court concludes that the second element is satisfied because the dissemination of prior EEOC charges by a former employer to the employee's future employers

_____

[9] Deltaville Boatyard has comingled its arguments on the merits with its arguments in support of its Motion for Judgment on Partial Findings.  The first argument, related to the issue of retaliatory animus, appears to be the only one related to its motion.  The other arguments (material adversity, causation, and damages) require the Court to weigh the evidence, and are therefore not appropriate for resolution on a motion made pursuant to Fed. R. Civ. P. 52(c).  Accordingly, the merits of those arguments are addressed by the Court's Conclusions of Law, *infra* at Section IV.

(or prospective employers) constitutes a materially adverse employment action.  The Court has previously reached the same conclusion in resolving the Defendant's Motion for Judgment on Partial Findings, *supra* at Section III.  Accordingly, the Court incorporates that analysis in rendering its conclusion that Deltaville Boatyard took adverse employment action against Coles in disseminating the EEOC Charge.  Moreover, the Court rejects Deltaville Boatyard's argument to the contrary, based upon the factual allegation that Coles informed Crown about the EEOC Charge before Ruse discussed the matter with Crown.  Weighing the evidence, as the Court is required to do, the Court has credited Coles' version of events, concluding that Crown first learned of the EEOC Charge from Ruse on or about June 8, 2005.

4.      The Court further concludes that the third and final element has been satisfied because Coles' filing the EEOC Charge was the cause of Ruse's dissemination thereof.  Here, the protected activity itself is intimately connected with the resulting act of retaliation such that the two cannot be separated, absent some alternative explanation.  The only alternative offered is that Ruse wanted to help Coles' future employers avoid a similar result (i.e. an EEOC charge against any one of them).  In addition, Ruse has explained that he faxed the EEOC Charge itself to Crown solely to support what had already been conveyed verbally.  The Court simply does not credit Ruse's testimony of such a rationale.  First, it is irrelevant whether Ruse faxed a copy of the charge as an act of retaliation or simply to "back up" the retaliation which he had already engaged in.  That is, by telling Crown about the EEOC Charge, Ruse had already retaliated against Coles.  The relevant question of law is whether his act of retaliation was caused by Coles' protected activity, and the fact that one isolated act may have been motivated by additional reasons does not necessarily "break" the causal chain.  But for Coles' filing the EEOC Charge, the act of disseminating it could not have occurred, either verbally or through facsimile.

14

The most reasonable inference is that the protected activity was the cause of the retaliation. Accordingly, the third and final element of Coles' retaliation claim -- causation -- has been established.

5.      The Court rejects (again) the Defendant's argument that the case of <u>Gnadt v. Castro</u>, No. 95-1369, 1997 U.S. App. LEXIS 17333 (4th Cir. July 10, 1997), holds that liability requires proof that Coles lost his subsequent employment because of the retaliatory act in order to establish liability for retaliation.  Deltaville Boatyard has misunderstood this Court's holding in resolving the motion for summary judgment to suggest that the Court held that <u>Gnadt</u> "is [not] still good law and should [not] be followed."  (Def.'s Post-Trial Br. at 31.)  The Court only distinguished the facts in <u>Gnadt</u> because the employer in that case merely threatened action, whereas Ruse here actually took action in disseminating the EEOC Charge to Coles' subsequent employers.

6.      Moreover, the Court agrees with the holding in <u>Gnadt</u> that *some* effect must be felt by the employee, which might include "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses."  1997 U.S. App. LEXIS 17333 at *10 (citing 42 U.S.C. § 1981a(b)(3)).  Deltaville Boatyard seeks to limit the universe of available damages to pecuniary losses only, which is inconsistent with the holding in <u>Gnadt</u>. Indeed, in weighing the evidence, the Court agrees that Coles suffered no lost wages, but concludes that some emotional pain was suffered on his part, minimal though it may have been. There is nothing inconsistent in this conclusion from that of <u>Gnadt</u>, and the Court therefore rejects the Defendant's narrow view of the remedies available to Title VII plaintiffs.

7.      Dissemination of the EEOC Charge was a materially adverse employment action caused by Coles' protected activity, regardless of whether Ruse subjectively believed that it

would harm Coles in any way. Thus, Deltaville Boatyard is liable to Coles for retaliation pursuant to Title VII and 42 U.S.C. § 1981.

**B.      Damages**

    **1.      Lost Wages**

8.      In cases brought pursuant to Title VII, lost wages in the form of "back pay" are generally available to a prevailing employee, which includes those wages that would have accrued to the time when the court *might* reinstate the employee. See Corti v. Storage Tech. Corp., 304 F.3d 336, 342 n.11 (4th Cir. 2002) (emphasis added) (citing 42 U.S.C. § 2000e-5(g)). Such "back pay" is "a make-whole remedy that resembles compensatory damages in some respects." Id (quoting Landgraf v. USI Film Products, 511 U.S. 244, 253 (1994) (internal quotation marks omitted). Thus, to avoid a "double-recovery," such damages were explicitly omitted from those compensatory damages available pursuant to 42 U.S.C. § 1981a. Id at 342-43. In addition, the Court may exercise its discretion to award "front pay," which includes those future earnings lost as a result of the statutory violation. See Benson v. Thompson Cadillac-Oldsmobile, Inc., 287 Fed. App'x 249, 256-57 (4th Cir. 2008) (citing Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 651 (4th Cir. 2002)). In any event, such "make whole" relief must be "for losses suffered *on account of*" the Title VII violation. Albemarle Paper Co. v. Moody, 422 U.S. 405, 419 (1975) (adopting the rule from cases brought pursuant to the National Labor Relations Act in Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 197 (1941)).

9.      The parties agree that Coles suffered no lost wages except for possibly one week without work between his employment with Crown Marine and Deagles, which the Defendant disputes. However, the Court credits Crown's testimony and finds that Coles' termination from Crown Marine was not the result of any information shared by Ruse. Rather, it resulted from

frequent and improper cellular phone use, leaving the jobsite early without permission, and at least one instance in which he did not adequately perform his job.  Accordingly, the Court does not award any damages resulting therefrom.

### 2.  Compensatory Damages for Emotional Distress

10.  Coles argues that he suffered extensive emotional distress damages.  The Court credits such damages to only a minimal degree.  If everything to which Coles testified were true, it would appear that he suffered extensive emotional distress.  "[A] plaintiff's testimony, standing alone, may support a claim of emotional distress."  Dennis, 290 F.3d at 652 (citation omitted) (internal quotation marks omitted).  However, "courts scrupulously analyze an award of compensatory damages" such that the "injured party must reasonably and sufficiently explain the circumstances of [his] injury and not resort to mere conclusory statements."  Id (citation omitted) (internal quotation marks omitted).  "[T]he injury must be demonstrable and [] the plaintiff must show a causal connection between the violation and [his] emotional distress."  Id (citation omitted) (internal quotation marks omitted).  Here, the evidence from which Coles argues for emotional distress damages includes the deterioration of his personal life in a way which has no apparent or reasonable causal connection to his problems with Deltaville Boatyard.  See Findings of Fact Nos. 18-19, *supra* at Section II.

11.  The Court has found that only minimal emotional distress resulted from Deltaville Boatyard's retaliatory acts against Coles.  Accordingly, the Court concludes that appropriate compensation for emotional distress in this case is one thousand dollars ($1,000.00).[10]

---

[10] The one-thousand dollar value ($1,000) is not reached arbitrarily or without consideration.  It was disclosed at trial that the EEOC had previously facilitated a settlement of this matter for five-thousand dollars ($5,000.00), presumably with Coles' concurrence, but Deltaville Boatyard withdrew its initial consent due to additional conditions added by the EEOC.  (Trial Transcript at

### 3.   Punitive Damages

12.   Punitive damages are available where "the complaining party demonstrates that the [employer] engaged in a discriminatory practice . . . with malice *or with reckless indifference to the federally protected right of [the employee]*."  42 U.S.C. § 1981a(b)(1) (emphasis added). The same rule applies to Title VII claims.  Lowery, 206 F.3d at 441.  Malice is established where "the defendant's conduct is shown to be motivated by evil motive or intent."  Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536 (1999).  However, reckless indifference may be established simply by showing that the employer acted despite a perceived risk that its actions would violate federal law.  Id. at 536.  Such punitive damages are available regardless of whether any compensatory damages are awarded.  Corti, 304 F.3d at 342.[11]

13.   Here, there is no evidence that Ruse acted with malice.  First, with respect to the initial dissemination of the EEOC Charge to Crown, the parties have stipulated that Ruse acted

---

41-42.)  That, of course, was a value agreed to *prior to* what this Court has concluded is Coles' exaggeration of his emotional distress damages at trial.  Accordingly, starting at a value of five thousand dollars ($5,000.00), and reducing it based on the Court's conclusion that Coles' exaggeration has now become apparent, the Court arrives at a value of one-thousand dollars ($1,000.00).  No other reasonable measure of such damages is available or known.

[11] The Fourth Circuit, the appellate jurisdiction governing this Court, has held that "[i]n Title VII cases, a jury's punitive damage award will stand even in the absence of compensatory damages if back pay has been awarded."  Corti, 304 F.3d at 343.  However, the Fourth Circuit also acknowledged that some circuits award punitive damages regardless of whether back pay is awarded, but refrained from so holding because the district court had awarded back pay in the case then under review.  Id at 343 n.13 (citing Timm v. Progressive Steel Treating, Inc., 137 F.3d 1008, 1010 (7th Cir. 1998) and Cush-Crawford v. Adchem Corp., 271 F.3d 352, 357 (2d Cir. 2001)).  At a minimum, the analysis in Corti suggests that any compensatory damages would be sufficient to reach the result therein, not necessarily back pay alone.  Id at 343.  Even so, the Fourth Circuit's recognition that "nothing in the plain language of § 1981a conditions an award of punitive damages on an underlying award of compensatory damages" suggests that it might agree with the Seventh Circuit decision in Timm, permitting punitive damages even when no compensatory damages are awarded.  Here, because compensatory damages have been awarded due to emotional distress suffered by Coles, minimal as those damages may be, punitive damages are available here regardless of which approach is taken.

18

with no intent to harm Coles.  Moreover, there is otherwise no evidence that he acted with "evil motive or intent" in any later discussions with Coles' subsequent employers.  True, the Court has concluded that Ruse was angry.  But the fact that he was angry, especially if he believed that such anger was justified, does not render his conduct evil in order to award punitive damages.  His conduct was prohibited by the statute under these circumstances, but simply violating the statute falls short of malicious activity.

14.     Nevertheless, the reckless indifference standard warrants some minimal level of punitive damages in this case.  Because Ruse received notice of the Retaliation Charge *before* he contacted Deagles, he was on notice that his conduct might be retaliatory.  By engaging in further retaliation by warning Ruark about Coles' EEOC Charge, Ruse was retaliating against him while aware that his conduct might be a violation of Coles' Title VII rights.  Accordingly, he acted with reckless indifference to Coles' Title VII rights.

15.     However, the level of retaliatory conduct established here is not as pervasive as Coles has argued.  While Coles asserts that Ruse continued to contact multiple employers, all the while intending to disrupt Coles' career, the evidence establishes only that on two occasions, Ruse discussed the EEOC Charge with Coles' subsequent employers.  First, he discussed the matter with Crown and faxed the EEOC Charge to him.  Second, he discussed the matter with Ruark, who does not appear to have allowed it to affect her opinion of Coles.  The Court has credited the deposition testimony of Farinholt, concluding that he did not discuss the matter with Ruse at all during the relevant timeframe.  Accordingly, Ruse was not orchestrating a "grand conspiracy" among the boatyards in the region, as Coles would have this Court believe.  While Ruse's actions were retaliatory, they were isolated events that do not appear to have "infected" the local industry, as Coles has asserted.

19

16.     Because there was no malice, and Ruse's conduct caused only minimal actual harm to Coles, the Court does not consider a substantial punitive damages award appropriate in this case.  However, some level of punitive damages are appropriate.  Accordingly, the Court awards punitive damages of one thousand dollars ($1,000.00).[12]

## C.     Attorney's Fees

17.     As the prevailing party in a claim brought pursuant to Title VII, the Court must award attorney's fees to Coles.  42 U.S.C. §§ 1988, 2000e-5(k); see also Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll., 928 F.2d 118, 123 (4th Cir. 1991).  The Court directs Coles to file a motion forthwith for such fees pursuant to Fed. R. Civ. P. 54(d)(2), which this Court shall review for reasonableness.

18.     However, in addressing attorney's fees, the Court emphasizes the *de minimis* results obtained in this case, especially in light of the considerable time and resources expended by both parties.  In addressing what constitutes a reasonable fee, both parties should account for this variable.  Pellegrin v. Nat'l Union Fire Ins. (In re Abrams & Abrans, P.A.), 605 F.3d 238, 247 (4th Cir. 2010) (citing Doe v. Chao, 435 F.3d 492, 506 (4th Cir. 2006)) ("We have noted that 'the most critical factor in determining the reasonableness of a fee award is the degree of success obtained'"); see also Gumbhir v. Curators of the Univ. of Missouri, 157 F.3d 1141, 1146-47 (8th Cir. 1998) (reducing fee award by seventy-five percent due to limited success).

## IV. CONCLUSION

For the reasons set forth herein, the Court concludes that Deltaville Boatyard retaliated against Coles because he filed the EEOC Charge.  The Court shall enter JUDGEMENT for Coles

---

[12] In arriving at this figure, the Court has conducted essentially the same analysis as it did with regard to emotional distress damages, *infra* at 17 n.10, and concludes that an equal amount is warranted.

in the amount of two thousand dollars ($2,000.00).  Moreover, the Court shall award attorney's fees and costs to Coles as the prevailing party, subject to review for reasonableness as shall be addressed in a forthcoming motion made pursuant to Fed. R. Civ. P. 54(d)(2).

An appropriate Order will issue.

_____ /s/ _____

Dennis W. Dohnal
United States Magistrate Judge

Richmond, Virginia
Dated: October 11, 2011