## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| COREY L. COLES, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )      CIVIL NO. 3:10cv491-DWD |
| | ) |
| DELTAVILLE BOATYARD, LLC, | ) |
| | ) |
|     Defendant. | ) |
| | ) |

### MEMORANDUM OPINION

This matter is before the Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1) on the Plaintiff's Motion for Attorney's Fees (ECF No. 112). The matter has been adequately briefed by the parties' submissions and the Court dispenses with oral argument, finding that it will not materially aid in the decisional process. For the reasons set forth herein, the Plaintiff's Motion for Attorney's Fees (ECF No. 112) shall be GRANTED, in part, and DENIED, in part, and the Plaintiff shall be awarded a sum of fifty-nine thousand one-hundred sixteen and 67/100 dollars ($59,116.67) for attorney's fees and three-thousand three-hundred twenty-two and 59/100 dollars ($3,322.59) in costs accrued in pursuit of this action, for a combined award of sixty-two thousand four-hundred thirty-nine and 26/100 dollars ($62,439.26).

### I. BACKGROUND

Plaintiff Corey L. Coles ("Coles" or the "Plaintiff") brought this action against his former employer, Deltaville Boatyard, LLC ("Deltaville Boatyard"), asserting claims for unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981. The Court will dispense with a recitation of the facts of the case, because they are fully set

forth in the Court's Memorandum Opinion in which findings of fact and conclusions of law were recorded following trial without a jury.  It is sufficient to summarize the Court's conclusion that Deltaville Boatyard had "warned" two of Coles' subsequent employers that he might file an EEOC charge against them, and that it did so in retaliation for his having pursued a complaint against Deltaville Boatyard.  Specifically, the Court found that such "warnings" were issued to one John Crown ("Crown"), the owner of Crown Marine, and one Janie Ruark ("Ruark"), then the owner of Deagles Boatyard.  However, the Court found that no such retaliation occurred with regard to a third employer, one Rick Farinholt ("Farinholt"), the owner of Chesapeake Marine Railway.

The Court also found that Coles suffered no lost wages as a result of any of the retaliatory acts, thereby eliminating his claim for seven-hundred sixty-eight dollars ($768.00) of economic losses.  Moreover, the Court found that his claim for compensatory damages of emotional distress, while viable to some degree, was significantly exaggerated.[1]  The Court concluded that one-thousand dollars ($1,000.00) was an appropriate award for emotional distress.  Also, the Court concluded that Deltaville Boatyard's second act of retaliation was done "with reckless indifference" to Coles' Title VII rights, thus leading the Court to award one-thousand dollars ($1,000.00) in punitive damages.  (Mem. Op. of Oct. 11, 2011 at 20, ECF No. 110.)  In rendering this decision, the Court specifically instructed the parties to brief the issue of how the "*de*

---

[1] The Court clarifies one point about its ruling on the merits.  Deltaville Boatyard asserts that, at trial, Coles' claims "were revealed to be baseless and exaggerated."  (Def.'s Br. Opp'n Mot. Award Atty.'s Fees ("Def.'s Br.") at 13.)  While the Court concluded that the evidence of extensive damages for emotional distress were "exaggerated," liability was still found to have been clearly established.  (Mem. Op. of Oct. 11, 2011 at 8-9, 15-16, ECF No. 110.)  So although the harm to Coles may not have been proven to the extent initially alleged, Deltaville Boatyard's retaliation was nevertheless established at trial, sufficient to mandate an award of damages.

*minimis*" [2] damages award should impact the award of attorney's fees, if at all.  (Id.)

For purposes of addressing the Plaintiff's Motion for Attorney's Fees, it is also necessary that the Court take note of several relevant procedural aspects of the case.  First, Deltaville Boatyard filed a total of four dispositive motions.  (See Def.'s Mot. Dismiss, ECF No. 10; Def.'s Mot. Sum. J., ECF No. 74; Def.'s Mot. J. Partial Findings, ECF No. 98; Def.'s Mot. Alter or Amend J., ECF No. 117.)  Each of those motions appeared to demonstrate good faith arguments for relief, although none were wholly granted by the Court.  More importantly, perhaps, at least for purposes of assessing a reasonable award of fees, throughout the time that dispositive relief was being pursued, Deltaville Boatyard, unbeknownst to this Court, repeatedly threatened to file a motion for sanctions and attorney's fees against Plaintiff's counsel pursuant to Fed. R. Civ. P. 11.  (Pl.'s Br. Sup. Mot. Atty.'s Fees ("Pl.'s Br.") at 5.)

Deltaville Boatyard never pursued the Rule 11 procedure it had threatened.  However, the mere threat of sanctions and liability for attorney's fees led Coles' counsel to involve his law partner in what would have otherwise been a reasonably straightforward retaliation case.  Coupled with the threat of sanctions, each dispositive motion led to extensive time spent by Plaintiff's counsel researching and investigating numerous legal issues that might not otherwise have had to be researched, at least so extensively.

Upon conclusion of the litigation, counsel for Coles has submitted a detailed, itemized

---

[2] In its Conclusions of Law, the Court "emphasize[d] the *de minimis* results obtained" and invited the parties to brief the issue of how the results obtained should impact an award of attorneys' fees.  (Oct. 11, 2011 Mem. Op. at 20, ECF No. 110.)  "[D]e minimis" was admittedly a poor choice of words, as the Court did not intend to hold that two-thousand dollars ($2,000.00) is, by itself, a "trifling" or "minimal" sum of money.  See Black's Law Dictionary 464 (8th ed. 2004).  Instead, the Court's intention was to suggest that the sum was *relatively* minimal compared to the damages sought in this case, or those typically obtained in Title VII retaliation cases.  The Court invited briefing and analysis on an issue that was intentionally left unresolved at that time.

report of all attorney's fees and costs incurred, supported by the declaration of lead counsel,

Christopher N. North ("North").  (Pl.'s Mot. Atty.'s Fees ("Pl.'s Mot.") at Exs. 1-2, ECF Nos.

112-1, 112-2.)  In addition to his own time entries, North's Declaration attests to the time spent

by his co-counsel, William L. Downing ("Downing").  (Id.)  Moreover, Coles has submitted the

declaration of one David R. Simonsen, Jr. ("Simonsen"), a respected member of the bar of this

Court, not involved in this matter, but who is quite familiar with the local legal "market" relative

to employment litigation.  (Pl.'s Mot. at Ex. 3, ECF No. 112-3.)  Simonsen's Declaration opines

as to both the reasonableness of North and Downing's respective rates, as well as the

reasonableness of the time they expended on the matter.  (Id.)

In total, North spent one-hundred seventeen and one-quarter hours (117.25) on the case at

a billable hour rate of three-hundred dollars per hour ($300.00/hour), for a total fee of thirty-five

thousand one-hundred seventy-five dollars ($35,175.00).  (Pl.'s Mot. at Exs. 1-2.)  Downing

spent a total of two-hundred fourteen hours (214.00) on the matter at an hourly rate of two-

hundred fifty dollars per hour ($250.00/hour), for a total fee of fifty-three thousand five-hundred

dollars ($53,500.00).  (Id.)  Coles also claims costs totaling three-thousand twenty-two and

59/100 dollars ($3,322.59).  (Id.)  Deltaville Boatyard opposes any award of fees or costs,

characterizing the damages as merely "nominal," and otherwise challenging the reasonableness

of the fees and costs incurred.

## II. STANDARD OF REVIEW

A trial court's award of attorneys' fees is reviewed for an abuse of discretion.  EEOC v.

Cent. Wholesalers, Inc., 573 F.3d 167, 178 (4th Cir. 2009) (citing Johnson v. City of Aiken, 278

F.3d 333, 336 (4th Cir. 2002)).  Such a review is "sharply circumscribed" because federal

appellate courts recognize that the trial court "has close and intimate knowledge of the efforts

expended and the value of the services rendered," so the award will not be overturned unless

"clearly wrong."  Plyler v. Evatt, 902 F.2d 273, 277-78 (4th Cir. 1990).  The lodestar method, the

product of the hours reasonably expended times a reasonable rate, generates a presumptively

reasonable fee.  Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546,

564 (1986) (Delaware Valley I); Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th

Cir. 2009) ("In calculating an award of attorney's fees, a court must first determine a lodestar

figure").  Although "there is a 'strong presumption' that the lodestar figure is reasonable, . . . that

presumption may be overcome in those rare circumstances in which the lodestar does not

adequately take into account a factor that may properly be considered in determining a

reasonable fee."  Perdue v. Kenny A., __ U.S. __, 130 S. Ct. 1662, 1673 (2010).  While it is well

within the discretion of the district court to determine the amount of the fee, and to adjust the

lodestar product upward or downward as it deems appropriate, "this must be done on a principled

basis, clearly explained by the court."  Lyle v. Food Lion, Inc., 954 F.2d 984, 989 (4th Cir.

1992).

### III. ANALYSIS

Deltaville Boatyard argues against any award of attorneys' fees.  To that end, it first

argues that the damages were nominal and, secondly, that the amount of the fees requested

"shock the conscience" so as to be denied pursuant to Fair Hous. Council v. Landlow, 999 F.2d

92 (4th Cir. 1993).  The first argument must fail because the award, while relatively insignificant

in value compared to most employment cases, is more than merely nominal.  The second

argument must also fail because, although the fees requested are more than forty times the

amount of recovery, the fees are not so gross as to "shock the conscience" under the

circumstances in which the case was litigated.  In the alternative, Deltaville Boatyard otherwise

argues for a significant reduction in the total fee award.

In general, the Court agrees that the fee award should be reduced, albeit to a much lesser degree than that proposed by Deltaville Boatyard.  In support of its position urging a reduction of fees, Deltaville Boatyard asserts five arguments: (1) that because certain specific allegations contained in the Complaint, First Amended Complaint, and Second Amended Complaint were not specifically listed among this Court's findings of fact, Coles should not be deemed a "prevailing party"; (2) that Defense counsel's admitted threats of sanctions should have no bearing on the measure of appropriate attorney's fees; (3) that fees incurred after a particular point in time before trial (March 2011) could have been avoided if Coles had accepted a pending settlement offer; (4) that the evidence offered in support of the lodestar calculation is insufficient; and (5) that certain specific time entries are unreasonable for a variety of listed reasons.[3]  Not one of Deltaville Boatyard's noted arguments is of assistance to the Court in determining the extent of a fee reduction because none of the approaches is related to the reason for any reduction -- namely, the degree of success achieved and the amount of damages recovered.

Coles has proposed his own fee reduction of twenty percent of the fees incurred by Mr. Downing's work as well as a reduction of fees specifically incurred as a result of certain aspects of the case that were unsuccessful (*e.g.* interviews of certain witnesses not called to testify at trial and efforts to prove a third retaliatory act).  The Court agrees with such a proportional rationale,

---

[3] Deltaville Boatyard has appended to its Opposition Brief two spreadsheets which contain specific arguments challenging the reasonableness of individual attorney time entries and costs incurred.  (Def.'s Br. at Exs. 6, 7, 8.)  These documents are not evidence, but appear, instead, to be an attempt to extend the page limit for argument without prior leave of Court (and to do so in a form not in conformity with E.D. Va. Loc. R. 7(F)(3)).  Accordingly, the Court need not consider those submissions.  However, the Court endeavors to consider those arguments generally, *infra* at Section III(D), finding such arguments to lack merit.

but finds that it should be related more closely to the *results* obtained.  Thus, the Court has concluded that it is appropriate to reduce the total fee award by one-third, as is more fully explained in Section III(C), *infra*.

**A.      An Award of Attorney's Fees Is Proper In this Case**

It is well-recognized that "a prevailing [Title VII] plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."  Hensley v. Eckerhart, 461 U.S. 424, 429 (1983).  "Section 1988 serves an important public purpose by making it possible for persons without means to bring suit to vindicate their rights."  Perdue, 130 S. Ct. at 1676.  Thus, where liability is established, Congress has sought to shift to the employer the attorney's fees incurred by a prevailing employee.  42 U.S.C. § 1988(b).

Before the Court can proceed to analyze the value of the requested award, the Court must address the threshold question of whether fees are appropriate at all.  In Farrar v. Hobby, the Supreme Court explained that a plaintiff is a "prevailing party" for purposes of awarding attorney's fees pursuant to 28 U.S.C. § 1988 when he obtains a judgment, however small, and even if it is a nominal judgment.  506 U.S. 103, 113-14 (1992).  However, the Supreme Court also cautioned that "[i]n some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all."  Id. at 115.  "When a plaintiff recovers only nominal damages because of his *failure to prove an essential element of his claim for monetary relief*, the only reasonable fee is usually no fee at all."  Id. (emphasis added) (internal citation omitted).  In reaching such a conclusion, the Supreme Court relied heavily on the notion that "the degree of a plaintiff's overall success goes to the reasonableness of a fee award."  Id. at 114 (citation and internal quotation marks omitted).  The Court also reiterated its previous holding that "the most critical factor in determining the reasonableness of a fee award is the degree of

7

success obtained." Id. (citation and internal quotation marks omitted).

In a concurring opinion, Justice O'Connor explained that "the *de minimis* exclusion is in fact part of the reasonableness inquiry." Id. at 118 (O'Connor, J., concurring). While she agreed with the majority, she cautioned that not "*all* nominal damages awards are *de minimis*. Nominal relief does not necessarily a nominal victory make." Id. at 121 (emphasis in original). She also set forth three factors that ought to be considered in determining whether a "victory" is nominal, regardless of whether the damages are nominal: (1) the extent of relief obtained; (2) the significance of the legal issue; and (3) the public purpose served by the litigation. Id. at 122. The Fourth Circuit, the appellate authority governing this jurisdiction, has adopted these factors, now known in this Circuit as the "Farrar-Mercer Factors." Mercer v. Duke Univ., 401 F.3d 199, 204 (4th Cir. 2005).

### 1.    Coles' Victory Is More than Nominal

In the first instance, Coles' recovery was not merely "nominal" because he obtained one-thousand dollars in *compensatory* damages for pain and suffering. He did not "fail[] to prove an essential element of his claim for monetary relief "; he simply obtained a lesser amount of relief than he had sought. Farrar, 506 U.S. at 115. By their very nature, compensatory damages are not nominal. This follows from the precept that "the awarding of nominal damages [] highlights the plaintiff's failure to prove actual compensable injury." Farrar, 506 U.S. at 115. And in terms of the total amount of Coles' damages, two-thousand dollars ($2,000.00), while not a significant recovery, is by no means a mere "pittance." See Id. at 120 (O'Connor, J., concurring). Thus, the Court could conclude its analysis on such a basis, finding that the award of compensatory damages itself renders Coles' victory more than merely nominal. Nevertheless, the Court will proceed to address and apply the Farrar-Mercer factors.

First, the total damages obtained are not grossly disproportionate to those sought.  At trial, Coles sought no more than seven-hundred sixty-eight dollars ($768.00) in economic damages for lost wages, signaling from the outset of the trial that a large sum was never expected.  Although the Court found that he did not prove his economic damages, his total compensatory damages for pain and suffering exceed his alleged lost wages.  And while Coles cited cases awarding between $50,000 and $300,000 for emotional distress, he never sought any particular figure in his case.  (See Pl.'s Post Trial Br. at 27.)   Coles' failure to identify a precise value for his pain and suffering, coupled with the Court's conclusion that some of the pain and suffering was, in essence, exaggerated, led the Court to award compensatory damages of one-thousand dollars ($1,000.00).  At most, Coles hoped to receive a five-figure verdict for pain and suffering.  But because he requested no more than $768.00 in economic damages, the case never appeared to be one seeking significant monetary recovery.  Thus, two-thousand dollars ($2,000.00) in total recovery is not grossly disproportionate to the damages sought.  such is especially true when compared to Farrar, where one dollar was awarded to a plaintiff who sought a recovery of some seventeen million dollars.  506 U.S. at 121 (O'Connor, J., concurring).  Accordingly, the first Farrar-Mercer factor does not weigh against an award of attorney's fees here.

The second Farrar-Mercer factor concerns the significance of the legal issue in the case.  From the outset, the Court recognized that the case falls within a well-recognized category of retaliation cases in which a former employer disparages the employee to subsequent or prospective employers.  (See Feb. 14, 2011 Mem. Op. at 13 n.5, ECF No. 23 (collecting cases); May 6, 2011 Mem. Op. at 7, ECF No. 74 (same).)  Nevertheless, Deltaville Boatyard has repeatedly taken the position that it may lawfully "warn" Coles' subsequent employers that he

might file an EEOC charge against them -- action that this Court has found to be retaliatory in nature under the circumstances presented.  So although the legal issue may be settled, it appears that the particular instance of retaliation presented in the case required the Court to clarify the point.  Thus, the second Farrar-Mercer factor favors an award of at least some attorney's fees.

For similar reasons, the third Farrar-Mercer factor favors awarding Coles' some attorney's fees because it serves the public goal of insulating protected activity from retaliation. In passing Title VII's anti-retaliation provision, Congress sought "to secure [its] primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees."  Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 63 (2006).  If an employee believes that engaging in protected activity will lead to "warnings" issued to future employers, he is unlikely to rely on Title VII's protections without considerable pause.  That is exactly the sort of chilling effect of retaliation that Congress sought to avoid, and cases like this one therefore serve the public purpose of redressing such wrongs.  Contrary to Deltaville Boatyard's argument, Coles' failure to request declaratory or injunctive relief is of no consequence.  The result obtained against Deltaville Boatyard in this litigation will guide other employers' conduct, both during litigation and in avoidance of it.  "In our legal system, with its reliance on stare decisis and respect for precedent, a case involving the claim of a single individual, without any request for wide-ranging declaratory or injunctive relief, can have a profound influence on the development of law and on society."  Mercer, 401 F.3d at 208.  Thus, the third factor favors an award of attorney's fees in this case as well.

It is also significant that retaliation was well-established in this case.  Although the Fourth Circuit has not explicitly recognized the rule, this Court has heretofore cited the

proposition recognized by another court that "[a]n employer who retaliates can not [*sic*] escape liability merely because the retaliation falls short of its intended result."  EEOC v. L.B. Foster Co., 123 F.3d 746, 754 (3d Cir. 1997).  It similarly follows that an unsuccessful defendant cannot avoid its liability for attorney's fees simply because the retaliatory acts failed to result in the plaintiff losing his job (or that the plaintiff successfully mitigated most damages).  So although the level of damages might counsel some reduction from the lodestar, *infra* at Section III(C), it does not countenance a complete elimination of a fee award.

## 2.    The Fee Request Does Not "Shock the Conscience"

Deltaville Boatyard also asks this Court to deny any award of attorney's fees as "so outrageously excessive so as to shock the conscience of the court."  Fair Hous. Council, 999 F.2d at 94.  The issue turns not on whether a fee is appropriate, but on whether the requested amount is so unreasonably excessive that the Court ought not to consider it at all.  In Fair Hous. Council, the Fourth Circuit reversed the district court's award of a $20,000 fee request where the initial request was $537,113.[4]  In that case, counsel's time records provided only general descriptions that could not be associated with particular efforts in the case, such as "review discovery and draft discovery – 4.5 hours."  Id. at 95.  The Court has reviewed all of the time entries submitted in this case and finds that they are very detailed, allowing the Court to associate each entry with specific tasks performed in pursuit of the case.  (Pl.'s Mot. at Ex. 2.)

The Court in Fair Hous. Council also emphasized the plaintiff's failure to make any effort to deduct time entries related to unsuccessful claims.  Here, counsel for Coles has made some

---

[4] Coles emphasizes that the figure sought would be significantly higher in today's dollars once inflation is included as part of the calculus.  Without considering the particular dollar amount in terms of today's dollars, the Court nevertheless accepts the obvious proposition that the figure would be significantly higher in today's legal market, in which rates have dramatically increased without regard to inflationary pressures.

good faith effort to do so by his proposed reductions, rendering his proposed fee award more reasonable than that in Fair Hous. Council.  Although the Court will reject Coles proposal, opting instead for a one-third overall reduction, his effort to submit a reasonable fee request contrasts sharply with that at issue in Fair Hous. Council.  Thus, Coles' requested fee award does not "shock the conscience," and will be considered according to the required lodestar analysis.

**B.      Lodestar Analysis**

Coles has submitted evidence of the hours spent in pursuit of his claims, the fees charged for those hours, and declaratory evidence in support of the reasonableness of those fees.  Such evidence is all that is required in order for the Court to utilize the lodestar calculus.  See Delaware Valley I, 478 U.S. at 564.  Without any evidence to the contrary, Deltaville Boatyard simply argues that such evidence is insufficient to calculate a lodestar figure.  To the contrary, the Simonsen Declaration provides a competent third-party opinion that both the hours expended and rates charged are reasonable for the relevant legal market.

**1.      Rates are Reasonable**

Coles has cited this Court's recent decision concerning attorney's fee decision in Stewart v. VCU Health Systems, No. 3:09cv738, 2011 U.S. Dist. LEXIS 114475, at *3 (E.D. Va. Oct. 4, 2011) to note that the Court found even higher fees reasonable for counsel in a Title VII case in the same legal market.  While such a comparison may be appropriate to establish the reasonable rates in some cases, the itemized list of time entries and the declarations of North and Simonsen submitted in this case are sufficient to establish the reasonable rates that should apply.  In that regard, the Court accepts that three hundred dollars per hour ($300/hour) is a reasonable rate for North's time and that two-hundred fifty dollars per hour ($250/hour) is a reasonable rate for Downing's time.

12

### 2.       Hours are Reasonable

At first glance, the Court might have considered the total hours spent on this case to be excessive, given Coles' admission that his claimed economic losses were relatively low. However, the Court accepts as true Simonsen's Declaration, which opines that the hours spent on the matter were reasonably necessary.  (Pl.'s Mot. at Ex. 3.)  And, as the Fourth Circuit has recognized, the trial court's exercise of discretion is based upon its "close and intimate knowledge of the efforts expended and the value of the services rendered." Plyler, 902 F.2d at 277-78.   In that respect, two aspects of the case weigh in favor of Coles' counsel's significant efforts.  First, Deltaville Boatyard sought dispositive relief on four separate occasions, which reasonably required significant efforts in response on the part of Coles' attorneys.  In addition, Deltaville Boatyard's repeated threats of Rule 11 sanctions led Coles' counsel to reasonably spend additional time on research and investigation than may have otherwise been necessary. Thus, the Court concludes that the total hours spent on this matter were, indeed, reasonable.

### a.       Deltaville Boatyard's Four Dispositive Motions

Having ruled on each of Deltaville Boatyard's four dispositive motions, the Court is familiar with the additional efforts required by Plaintiff's counsel as a result.[5]  At the same time, the Court does not believe that any of those motions were filed in bad faith, as each was supported by a well-reasoned argument based on existing law.  The fact that the Court denied dispositive relief simply indicates that there were issues of disputed material fact, not that it was improper for Deltaville Boatyard to pursue such dispositive relief.

At the same time, it cannot be ignored that Coles ultimately prevailed.  In reaching a

---

[5] The subject motions were: (1) Deltaville Boatyard's Motion to Dismiss (ECF No. 10); (2) Deltaville Boatyard's Motion for Summary Judgment (ECF No. 33); (3) Motion for Judgment on Partial Findings (ECF No. 98); and (4) Motion to Alter Judgment (ECF No. 117).

favorable result, Coles' counsel was required to ably defend against each motion for dispositive relief. The Court can no more fault Coles for resisting each motion than it could fault Deltaville Boatyard for seeking such relief. Obviously, the efforts in resisting each motion were reasonably necessary for Coles to obtain the ultimate judgment in his favor. Knowing that it may have to pay attorney's fees in the event that Coles prevailed at trial, Deltaville Boatyard cannot now be surprised by the extensive time entries arising out of each response to its own dispositive motions. Such aspects of the case support the significant time spent on the matter, further supporting the Court's finding that the considerable number hours spent by Coles' counsel were reasonable.

### b.      Deltaville Boatyard's Repeated Threats of Rule 11 Sanctions

It also cannot be ignored that much of Coles' counsel's efforts were made necessary by Deltaville Boatyard's repeated threats to file sanctions pursuant to Rule 11. Such unfounded threats, as they appear to the Court to have been, inappropriately employed Rule 11 as a sword. Rule 11 is designed to "streamline" the litigation process. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990). In some instances, however, the abuse of Rule 11 may, itself, serve to increase a party's expenses while needlessly delaying resolution of the substantive dispute between the parties. See, e.g., Greeley Publ'g Co. v. Hergert, 233 F.R.D. 607, 611 (D. Colo. 2006) ("A Rule 11 motion for sanctions should never be employed as a means to achieve some tactical advantage").

Here, counsel for Deltaville Boatyard threatened sanctions against Coles throughout the course of the proceedings before the Court, forcing Coles' attorneys to repeatedly evaluate the factual and legal basis of their claims well beyond the "reasonable" investigation mandated by Rule 11. As in all cases, adversarial counsel have offered varying constructions of the facts in

14

their respective clients' favor.  Regardless of how counsel for either side may have previously construed the facts in their favor, the Court has now concluded that on at least two occasions, Ruse contacted Coles' future employers to "warn" them that Coles might engage in further protected activity against those employers.  Nevertheless, even to this day, counsel for Deltaville Boatyard continues to assert that the case is a patently frivolous lawsuit, threatening Rule 11 sanctions against Coles, while never once actually engaging the proper Rule 11 procedures. Such accusations and sanction-based litigation strategy rightfully led Coles' counsel to expend additional time investigating and researching the case.  Having caused the additional fees by its own conduct, Deltaville Boatyard cannot now claim that the related fees are unreasonable.

There also exists an inexplicable inconsistency in Deltaville Boatyard's counsel's Rule 11 position.  On the one hand, Coles' counsel is accused of pursuing a frivolous lawsuit – in which they succeeded.  On the other hand, in opposing the propriety of fees according to the Farrar-Mercer factors, it is now argued that the case has no precedential value whatsoever. While the Court may agree with the latter assessment, it would do so only because there already exists considerable authority supporting Coles' legal theory.  Such is exactly the reason why Deltaville Boatyard's repeated threats of Rule 11 sanctions were without merit.  If defense counsel's Rule 11 threats had any arguable merit, then the case would indeed establish significant precedent.  Of course, such is not the case, and counsel's threats served only to needlessly increase the cost of litigation, thus supporting an award of attorney's fees.

The hours that Coles' counsel spent on the matter were reasonable, and all that remains for the Court to calculate the lodestar is to multiply those hours by the reasonable rates.  North spent 117.25 hours on this case at a rate of $300.00/hour, for a lodestar of $35,175.00.  Downing spent a total of 214.00 hours on this case at a rate of $250.00/hour, for a lodestar of $53,500.00.

Together, the total lodestar comes to $88,675.00.

## C.  Adjustments to the Lodestar

The lodestar does not adequately account for the result in this case for two reasons.[6]

First, the damages actually suffered, though tangible, were difficult to prove and relatively small compared to those cases in which an employee is without employment for some significant time. While it seems appropriate to adjust the attorney's fee award such that it relates to the outcome of the case in some respect, the reasonable efforts of counsel were the result of efforts to prove liability much more than damages.  Thus, the fee award cannot be based exclusively on the numeric value of Coles' verdict.

Coles has proposed a twenty percent (20%) reduction of Downing's fees (but none for North's fees) due to his relative inexperience in the area of employment litigation.  (Pl.'s Br. at 17.)  However, the Court has not perceived any deficiency in Downing's representation of Coles to warrant applying a discount to his efforts alone.  His lower rate of pay already accounts for his relatively lower level of experience in employment litigation, as compared to North, and so an adjustment to the lodestar on that basis is not appropriate and is otherwise unnecessary.  See Delaware Valley I, 478 U.S. at 565.  Rather, the Court's basis for a downward adjustment from the lodestar is that the results obtained, while not insignificant, are notably lower than Coles had sought.  And because the reduction is outcome-driven, there is no reason that it should apply only to Downing, and not to North as well.

---

[6] The Court has also considered whether any of the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (1974) ought to result in a departure from the lodestar.  See also Robinson, 560 F.3d at 243-44.  However, as is increasingly recognized by other federal courts, most of those factors that would have any import here are "subsumed" by the lodestar calculation itself.  Delaware Valley I, 478 U.S. at 564 (citation omitted).  Only the predominant factor considering the amount of recovery has any bearing on the Court's analysis in this case. See Farrar, 506 U.S. at 114.

There is simply no available way to relate any individual time entry with the results obtained.  In the aggregate, however, a proportional approach best accounts for the amount of recovery in the case.  Adjusting the lodestar downward by a factor of one-third will achieve the goal.  The Court arrives at such a percentage reduction by considering two variables related to the recovery in this case: (1) Coles failed to prove any economic losses, which are approximately one-third of the value of the total judgment actually obtained; and (2) Coles proved at trial only two out of three acts of retaliation alleged.

Coles' unproven claim for economic losses consisting of lost wages in the amount of $768.00 are approximately one-third of the $2,000.00 actually recovered in this case.  Alone, such a coincidental circumstance would not necessarily mandate a downward adjustment from the lodestar.  Moreover, there is no authority to suggest that attorney's fees should always be awarded proportionally to the value of the verdict divided by the *ad damnum*.  While there was no particular *ad damnum* for emotional distress damages in the case, Coles asserted a generalized request for emotional distress damages at a level which the Court concluded was unsubstantiated -- thus giving rise to the downward adjustment.

A one-third reduction strikes the Court as appropriate for a second reason -- the evidence at trial supported two of the three acts of retaliation, and the Court's award of compensatory and punitive damages was based solely on those two acts.  Each of Coles' counsel's time entries doubtlessly involved some overlap between the circumstances of all three alleged acts of retaliation.  Some entries may reflect an investigation of only those acts of retaliation actually proven, while some entries might arise out of the unsuccessful efforts to prove the third allegedly unlawful act.  However, it is impossible for the Court to accurately segregate the effort for each entry.  Accordingly, the Court deems that the most appropriate method is to reduce all fees by

one-third which, in effect, accounts for the failure to prove the third act of retaliation.

It similarly follows that total damages of two-thousand dollars ($2,000.00) would have been increased to at least three-thousand dollars ($3,000.00) had the third act been proven (or even higher had Coles proven that actual damages resulted therefrom). Thus, a reasoned proportional reduction ought to be one-third. The approach follows from the Supreme Court's recent guidance that adjustments "must be calculated using a method that is reasonable, objective, and capable of being reviewed on appeal." Perdue, 130 S. Ct. at 1674.[7] While imperfect, the proportional approach is reasoned, as opposed to an "arbitrary" numerical approach, which the Supreme Court has rejected. Id. at 1675.

In reaching the result, the Court similarly rejects the specific itemized reductions proposed by Coles, finding that they do not sufficiently relate to the outcome of the case. For example, Coles proposes to eliminate all costs and attorneys' fees incurred specifically as a result of Rick Farinholt's testimony, since he was at the center of the third, unproven act of retaliation. (Pl.'s Br. at 17.) However, some more general entries obviously reflect research and investigation into all three allegations of retaliation, such as those preparations for the deposition of Ruse. Again, in the aggregate, it can be fairly assumed that counsel devoted an equal effort to each claimed instance of unlawful retaliation. Thus, to reflect the fact that two out of three instances of retaliation were proven at trial, two-thirds of the costs and attorneys' fees ought to be awarded.

The Court's approach is also consistent with the Supreme Court's guidance that "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the

---

[7] In Perdue, the Court considered whether an enhancement to the lodestar was appropriate. The same logic applies here where the Court considers a reduction to the lodestar is appropriate.

representation of a meritorious civil rights case." Perdue, 130 S. Ct. at 1672 (citing Delaware

Valley I, 478 U.S. at 565). "[A] reasonable attorney's fee is one that is adequate to attract

competent counsel, *but that does not produce windfalls to attorneys*." Blum v. Stenson, 465 U.S.

886, 897 (1984) (emphasis added). Adjustments to the lodestar ought to "consider[] the

relationship between the extent of success and the amount of the fee award." Farrar, 506 U.S. at

115-16 (citation and internal quotation marks omitted). Here, reducing the fee in proportion to

those proven acts of unlawful retaliation serves to adequately reward counsel for successful

efforts, while simultaneously avoiding a "windfall" for counsel's unsuccessful effort. Id.

At the same time, the Court cautions one not to apply such an approach in all other cases.

Here, it is the Court's conclusion that the lodestar should be adjusted downward to reflect the

results actually obtained. The nature of the case is peculiar in the sense that the wrongful acts

were clearly established by the evidence, but there were no proven economic damages. Only

compensation for emotional distress and punitive damages were awarded, and the fee should be

adjusted to reflect such a result.

It is also important for the Court to note a distinction between its approach and that

proposed by Deltaville Boatyard. In its Brief in Opposition to Motion for Award of Attorneys'

Fees, Deltaville Boatyard listed no fewer than thirty-eight facts contained in a combination of

each of the three complaints filed by Coles in the case which the Court did not explicitly find had

been proven. (Def.'s Opp'n at 3-6.) Citation to allegations contained in the initial Complaint

and the First Amended Complaint is disingenuous where trial on the merits occurred within the

framework of a Second Amended Complaint. More significantly, however, many of those

factual allegations did not require the Court's attention in rendering its ultimate verdict. It is

sufficient that Coles proved facts supporting both of his claims of liability, but that he did so by

proving only two of the three allegedly retaliatory acts.  So, while the Court cannot reasonably engage in a "line-by-line" *post hoc* evaluation of each allegation in the pleadings, it can generally reduce the damages in proportion to the proven retaliation.

Applying its one-third reduction to the lodestar of $88,675.00, the Court concludes that the appropriate fee award in this case is $59,116.67.

**D.     Specific Itemized Deductions and Costs**

As the Court has already acknowledged, *supra* at note 3, Deltaville Boatyard has appended to its Brief in Opposition a spreadsheet arguing against a myriad of particular time entries and costs incurred in this case.  Having reviewed each of those arguments, the Court finds that they are without merit.  Each seeks to scrutinize whether any time entry or cost is related to the particular claims proven at trial.  While counsel's investigation of claims against Chesapeake Marine Railway, for example, did not lead to a claim specifically against that company, it certainly related to the factual developments of the case ultimately tried before the Court.  Thus, each time entry appears to have been reasonably necessary under the conditions in which this case was litigated.  And in the aggregate, the Court's one-third reduction already accounts for Coles' failure to prove the third act of retaliation.

The same is generally true of the itemized costs.  For example, a transcript of the discovery deposition of Tanya Brown appeared to be "reasonably necessary at the time of its taking."  Francisco v. Verizon South, Inc., 272 F.R.D. 436, 442 (E.D. Va. 2011) (internal quotation marks omitted) (quoting Jop v. City of Hampton, 163 F.R.D. 486, 488 (E.D. Va. 1995)).  Likewise, the mileage and service fees to secure the trial testimony of Janie Ruark appeared to be necessary "at the time" that the cost was incurred because Deltaville Boatyard had not yet agreed to stipulate to the use of her deposition testimony at trial.  Thus, each of the

costs sought is properly taxed against Deltaville Boatyard as the non-prevailing party.  Id.  The

total cost incurred is three-thousand three-hundred twenty-two and 59/100 dollars ($3,322.59).

## IV. CONCLUSION

For the reasons set forth herein, the Court concludes that Coles is entitled to an award of

fifty-nine thousand one-hundred sixteen and 67/100 dollars ($59,116.67) for attorney's fees and

three-thousand three-hundred twenty-two and 59/100 dollars ($3,322.59) in costs accrued in

pursuit of this action, for a combined award of sixty-two thousand four-hundred thirty-nine and

26/100 dollars ($62,439.26).

An appropriate Order will issue.


_____ /s/ _____
Dennis W. Dohnal
United States Magistrate Judge


Richmond, Virginia
Dated: December 19, 2011